**Debra ALLEN, Individually and as Next Friend of Michael Allen and Keith Allen, Minors, and as Executrix of the Estate of James Ray Allen, Deceased, and Fay Beale, Appellants,**

v.

**W.A. VIRNAU & SONS, INC., Appellee.**

No. 09–99–181 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 9, 2000.

Decided Oct. 12, 2000.

---

Mitchell A. Toups, Weller, Green & Toups, L.L.P., Beaumont, Patrick Zummo, Zummo, Mitchell & Perry, L.L.P., Houston, for appellants.

Henry S. Platts, Jr., Chalker, Blair, P.C., Houston, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

This is an appeal by appellants, Debra Allen and Fay Beale, from a summary judgment granted in favor of appellee W.A. Virnau & Sons, Inc. ("Virnau") in a products liability case.

While mowing on a neighbor's land, James Allen either fell off or was thrown from the tractor he was operating. The tractor continued to operate, pulling the mower behind the tractor over him and killing him. When Allen did not return home, his wife, Debra Allen, went to the neighbor's property to look for him. After finding the tractor lodged against a tree with the motor still running, she followed the mower's path through the pasture to find her husband's body.

Originally, the tractor, a Massey Ferguson model 245, had been sold by Massey Ferguson ("M–F") in 1981 to Virnau Leasing, Inc., a M–F dealer, which had used it for some six years before selling it. Although the seat belt and rollover protection system (ROPS) were standard equipment on the tractor, Virnau, the purchaser, had the option to order it from M–F without the system and did so. In 1987, Virnau sold the tractor to Charlie Konieczny, and sometime thereafter he sold it to Milton Pietsch. Fay Beale and her husband bought the tractor from Pietsch in 1991. James Allen, Fay Beale's son, periodically borrowed the tractor and used it in mowing and bush hogging in the area. On August 11, 1994, the date of the accident, Allen was mowing on the property of Kenneth Heflin, a neighbor.

In 1995 Debra Allen and Fay Beale filed suit against M–F, the manufacturer of the tractor, and Modern, Inc. of Beaumont, the manufacturer of the mower. Later, Virnau, the tractor dealer, and AGCO Corporation ("AGCO"), alleged to be the successor in interest to M–F, were added as defendants. The causes of action alleged against the defendants were negligence, gross negligence, strict liability in design, manufacturing, and marketing, misrepresentation, breach of warranty, and DTPA violations. Modern settled with appellants and was dismissed from the suit in 1997. Virnau, Massey–Ferguson, and AGCO moved for summary judgment in 1998. Ultimately, after a partial summary judgment was rendered in favor of M–F and AGCO, they settled with appellants, and all the causes of action against M–F and AGCO were dismissed. Appellants appeal from the summary judgment granted in favor of Virnau.

■ We first address Virnau's claim that this court lacks jurisdiction over appellants' appeal. Virnau bases its claim on the presence of a Mother Hubbard clause in the order granting summary judgment in favor of Virnau, which purports to dispose of all parties and claims. Virnau contends appellants did not file a timely notice of appeal from the summary judgment order. Instead, appellants relied upon the appellate timetables running from the dismissal of the claim of the *last* party in the suit. Thus, Virnau maintains that appellants have waived their right to appeal because of the untimely filing of their notice of appeal and that this court does not have jurisdiction. In this case, neither a severance nor a nonsuit of the Virnau summary judgment appears in the record. The issue is, for jurisdictional purposes, whether the existence of the unresolved claims against M–F and AGCO and the third party claim by M–F and AGCO against the owners of the property on which the accident occurred renders the Virnau summary judgment order interlocutory. The question thus becomes whether the Mother Hubbard clause in the summary judgment in favor of Virnau purports to finally dispose of the other claims and parties. We hold it does not. The partial summary judgment granted in favor of M–F and AGCO on the same day as the Virnau summary judgment expressly excepts from the summary judgment two of appellants' causes of action. When Virnau's summary judgment is read in its

entirety and in conjunction with the partial summary judgment in favor of M–F and AGCO, it is evident there was no attempt by the trial court to deal with the remaining issues and parties. To hold to the contrary would require us to stretch beyond all reason the language of these orders and, specifically, the Mother Clause in Virnau's summary judgment.

As pointed out by Virnau, the Texas Supreme Court has granted two petitions for review challenging the appellate court's application of the Mother Hubbard clause in determining whether a summary judgment order is final for purposes of appeal. *See Lehmann v. Har–Con Corp.*, 988 S.W.2d 415 (Tex.App.—Houston [14th Dist.] 1999) and *Harris v. Harbour Title Co.*, No. 14–99–00034–CV, 1999 Tex.App.LEXIS 2708, 1999 WL 211859 (Tex.App.—Houston [14th Dist.] April 8, 1999, pet. granted). Both cases follow the rule that if the summary judgment contains a Mother Hubbard clause, the judgment is final and appealable.

At the time of the order granting summary judgment in favor of Virnau, appellants' claims against defendants M–F and AGCO were still unresolved, and the summary judgment in favor of Virnau was not severed from the remaining parties and claims. We conclude the summary judgment in favor of Virnau remained an interlocutory judgment until the disposition of the other parties and their claims. A summary judgment that fails to expressly dispose of all parties and issues in the pending suit is interlocutory and not appealable *unless* a severance of that portion of the case is ordered by the trial court; in the absence of an order of severance, the party against whom an interlocutory summary judgment has been rendered has his right of appeal when, and not before, such partial summary judgment is merged in a final judgment disposing of all parties and issues. *City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex.1988). As this court has held, the mere inclusion of the Mother Hubbard clause does not automatically render all orders final for appellate purposes. *See Midkiff v. Hancock East Texas Sanitation, Inc.,* 996 S.W.2d 414 (Tex. App.—Beaumont 1999, no pet.); *see also Hervey v. Flores,* 975 S.W.2d 21, 25 (Tex. App.—El Paso 1998, pet. denied). It is only when the summary judgment order appears to be final by purporting to dispose of all claims or parties that the judgment is treated as final for purposes of appeal. *See Mafrige v. Ross,* 866 S.W.2d 590, 592 (Tex.1993). "If an otherwise outstanding claim logically cannot be brought within the grasp of the Mother Hubbard clause, the order is interlocutory." *Hervey,* 975 S.W.2d at 25. The summary judgment in favor of Virnau did not dispose of all the outstanding claims and parties. As a result, the appellate timetables did not begin to run until dismissal of the claim of the last party in the case. Appellant's notice of appeal was timely, and we have jurisdiction over the case.

Appellants contend the trial court erred in granting summary judgment in favor of Virnau. The motion for summary judgment contained eight grounds:

1. Virnau did not owe James Ray Allen a duty as a matter of law, and, therefore, the negligence and gross negligence claims must fail;

2. Virnau did not breach any duty owed Allen, as a matter of law, and the plaintiffs' negligence and gross negligence claims must fail;

3. Alternatively, plaintiffs have failed to present evidence on each element of their negligence and/or gross negligence claims;

4. Plaintiffs have failed to set forth evidence establishing that material facts exist with respect to each element necessary to hold a retailer, such as Virnau, liable for strict products liability;

5. Plaintiffs' claims are barred by statute of limitations;

6. Plaintiffs have failed to set forth evidence establishing that the tractor

was unfit for its ordinary purpose, or that their claims were brought within the applicable statute of limitations, and as such, their breach of warranty claims must fail.

7. Plaintiffs are not "consumers" within the meaning of the DTPA and lack standing to bring claims under that act; and

8. The plaintiffs have failed to set forth evidence creating a genuine issue of material fact as to each element necessary to establish their DTPA claims.

On appeal, appellants have not challenged the summary judgment grounds of breach of warranty or DTPA. Neither have they raised the issue that Virnau did not actually seek summary judgment on the misrepresentation ground. Consequently, we do not consider those causes of action on appeal. The grounds challenged by appellants on appeal are negligence, gross negligence, and strict liability in design defect and marketing.

Virnau's motion for summary judgment combines a regular motion for summary judgment with a no evidence motion, at least as to negligence and gross negligence. However, its pleading on strict liability is a no-evidence motion for summary judgment. A different standard of review applies to each.

■■■ When reviewing a regular summary judgment, we take as true all evidence favorable to the nonmovant. *See Science Spectrum, Inc. v.. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *see* Tex. R.Civ.P. 166a. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d at 546, 548 (Tex.1985).

■■■ Under the no-evidence summary judgment rule, the movant may move for summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. *See* Tex.R.Civ.P. 166a(i). The motion must state the elements as to which there is no evidence, and the reviewing court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *See id.* In essence, a no-evidence motion for summary judgment is a pretrial motion for instructed verdict, and we apply the same standard of review. *Vallance v. Irving C.A.R.E.S., Inc.,* 14 S.W.3d 833, 836 (Tex.App.—Dallas 2000, no. pet.).

We consider all the evidence in the light most favorable to the adverse party, disregarding all contrary evidence and inferences. A no-evidence summary judgment is improper if the adverse party has produced more than a scintilla of probative evidence raising a genuine issue of material fact on each challenged element of a claim or defense. Evidence that "is so weak as to do no more than create a mere surmise or suspicion" of a fact is legally insufficient and constitutes no evidence. *See Moore [v. K Mart Corp.],* 981 S.W.2d [266,] 269 [(Tex. App.—San Antonio 1998, pet. denied)] (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Moore,* 981 S.W.2d at 269 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

*Vallance,* 14 S.W.3d at 837 (some citations omitted).

## STRICT LIABILITY

■■■ Appellants first address the strict liability ground and contend Virnau's "no-evidence" motion failed to specify those

elements of strict liability on which there is no evidence. The elements of a cause of action for strict liability for a design defect are:

(1) The product was defectively designed when sold;

(2) The product was unreasonably dangerous (weighing the risk and utility) to the user;

(3) the product reached the user without substantial change in the condition in which it was sold;

(4) the defective and unreasonably dangerous condition of the product caused physical harm to the user;

(5) There was a safer alternative design; and

(6) The defect was a producing cause of the injury.

See *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301 (Tex.App.—Houston [1st Dist.] 1999, pet. denied); *see also* TEX.CIV.PRAC. & REM. CODE ANN. § 82.005 (Vernon 1997). Our review of Virnau's motion for summary judgment reveals Virnau limited its no-evidence motion to the following issues: (a) Was there evidence of the economic and scientific feasibility of safer alternatives? and (b) Was there evidence that the utility of the product outweighed its risk? Once Virnau specified the elements on which it claimed there was no evidence, the burden shifted to the non-movants to produce evidence raising a fact issue on those elements.

■■■■■■ As set out in section 82.005, a "safer alternative design" is a product design other than the one actually used that, in reasonable probability: (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility, and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge. Section 82.005 prescribes two elements—a safer alternative

design and producing cause—that must be proved, but are not alone sufficient, to establish liability for a defectively designed product. *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex.1999). A claimant must also show, under the common law, that the product was defectively designed so as to be unreasonably dangerous taking into consideration the utility of the product and the risk involved in its use. *Id.* at 257.

■■■■ Appellants contend there is sufficient evidence in the record of the existence of a safer alternative design that is both economically and technologically feasible. Attached as summary judgment proof is the deposition testimony of Anthony Fox, expert witness, product safety manager for AGCO, and employee of Massey–Ferguson for over twenty-five years. Fox acknowledged that a safer alternative design existed at the time the tractor was manufactured and that a ROPS and seatbelt were economically feasible at the time the tractor was manufactured.

In addition to Fox's testimony, appellants presented *documentary* evidence that the addition of a seatbelt and ROPS created a safer alternative design. Specifically, the 1967 memorandum from M–F's Product Planning Manager showed that the implementation of seatbelts and "safety frames" was feasible some twenty years before Virnau sold the tractor. In a 1975 document, a ROPS is shown on the design specifications and drawings for the tractor. Moreover, the seat belt and ROPS are listed as accessories in the "Operator's Manual and Assembly Instructions" on the M–F 245 tractor. Every photograph in the M–F 200 series pictures a tractor equipped with a ROPS, which is classified as "standard equipment" on the M–F 245 standard clearance tractor. Also listed as standard equipment is the seat belt. Based on our review of the record, we conclude appellants have produced evidence sufficient to raise a fact issue on the existence of a "safer alternative design."

Furthermore, the fact that the documentary evidence submitted by appellants

shows the same model tractor with the ROPS and the seat belt as standard equipment is some evidence, certainly more than a scintilla, that the combination system did not jeopardize or diminish the utility of the tractor. *See Tokai Corp.*, 2 S.W.3d at 260. In addition to the documentary evidence, Fox testified that after 1985, customers could not purchase the tractors without the ROPS and seat belt on them. Since the safer design was already standard equipment on the M–F 245 at the time Virnau purchased the tractor, and since it was mandatory on tractors after 1985, it is clear that the safer design was capable of being implemented without destroying the utility of the product. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999) ("[T]he safer alternative design must be reasonable, *i.e.*, ... it can be implemented without destroying the utility of the product.").

Based on our review of the record, we find appellants have produced more than a scintilla of probative evidence raising a fact issue on the challenged elements, and we conclude the trial court erred in granting a no-evidence summary judgment on the design defect/strict liability cause of action.[1] The trial court erred in granting summary judgment on the strict liability/design defect cause of action.

## NEGLIGENCE/GROSS NEGLIGENCE

■ Appellants next contend Virnau was not entitled to summary judgment on the negligence or gross negligence causes of action, on which Virnau sought a regular and, in the alternative, no-evidence summary judgment. Asserting it had no duty to James Allen, or, even if it had such a duty, there was no violation of that duty, Virnau contends that because it was merely a retailer of the tractor and did not

manufacture or design the product, there can be no cause of action in negligence against it for manufacturing or design defects. We agree. The mere selection of options made available to Virnau by the manufacturer does not make Virnau a designer or manufacturer of the product.

■ The remaining issues are Virnau's alleged negligence in selling or marketing the tractor without the seat belt and ROPS equipment and in failing to warn Allen of the dangers associated with the tractor. A negligence cause of action has the following elements: (1) a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach. *Van Horn v. Chambers*, 970 S.W.2d 542, 543 (Tex.1998).

■ We consider first appellants' claim that Virnau's decision to order and sell the tractor without a seat belt and ROPS breached the industry standard of care. In their pleadings, appellants acknowledge there is no statutory requirement that the M–F 245 have a ROPS and seat belt. According to Fox, M–F's decision to place the safety equipment on the tractors was a voluntary act to improve the safety of the tractor. Appellants point to evidence that Virnau ordered the tractor in 1981 without safety equipment, introduced it into the stream of commerce in that condition in 1987 some two years after M–F required its tractors to be sold with the equipment. Anthony Fox, Virnau's expert witness, testified a tractor sold without a ROPS and a seat belt is a reasonably safe product, although he acknowledged that under some conditions a tractor with such equipment is safer than one without it. The evidence of the improved safety of the tractor with the added equipment, however, is not by itself evidence that the tractor minus the equipment was unsafe. Appellants did not present an expert witness to testify that a prudent retailer under these circumstances would not have marketed the tractor with-

---

1. Virnau did not seek summary judgment on the strict liability/marketing defect cause of action. As a result, the trial court erred in granting summary judgment on that ground, and the strict liability/marketing defect and the strict liability /design defect causes of action are remanded to the trial court.

out the seat belt and ROPS. *See Sears, Roebuck, & Co. v. Kunze,* 996 S.W.2d 416, 421 (Tex.App.—Beaumont 1999, pet. denied) (Expert witness testified that no prudent manufacturer would have marketed the saw without a lower blade guard and that selling the saw without a guard was both a producing and proximate cause of buyer's injury.) Because appellants have not submitted evidence sufficient to raise a genuine fact issue on the claim of negligent sale, we conclude the trial court did not err in granting summary judgment on Virnau's negligent marketing claim.

Appellants also contend that Virnau, at the very least, had a duty to warn. Because Virnau sold the tractor to Konieczny in 1987 and had him sign an acknowledgment on the sales slip regarding the availability and significance of rollover protection, appellants argue that Virnau cannot claim that it had no duty to warn Allen. The statement read as follows:

> The buyer elects not to purchase rollover protection (cab or roll bar), acknowledging that its availability and significance have been discussed or are known.

Appellants also point out that a special form to be completed by the dealer showing the dealer explained thirteen items, including the generic "safety" item, to Konieczny is not filled out. Even if we accept this as true, we fail to see the significance of it in relation to Allen.

In its motion for summary judgment, Virnau contended it had no duty to warn Allen of any dangers in operating the tractor without the seat belt and ROPS, because the dangers were of common knowledge to the public and open and obvious. *See Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382–386 (Tex.1995). Further, Virnau claims there is no duty to warn of dangers which were unforeseeable at the time the product was marketed.

■ In a negligence cause of action, the focus is on the supplier's standard of care in the preparation, manufacture, or sale of a product; in strict liability, the focus is upon the condition of the product. *See Shears,* 911 S.W.2d at 384 (quoting *Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex.1978)). Citing *Shears,* Virnau's motion asserts Virnau had no duty to warn Allen, because the dangers associated with the tractor were open and obvious. We agree.

■ The Texas Supreme Court in *Shears* held that the law of products liability does not require a manufacturer or distributor to warn of obvious risks. *Id.* at 382. Some three years later, the Supreme Court revisited the issue again in *Sauder Custom Fabrication, Inc. v. Boyd,* 967 S.W.2d 349 (Tex.1998) and clarified the perspective from which such a determination is made. The principle issue in *Sauder* was "whether the obviousness of a risk is to be determined from the perspective of an average person or an average user of the product. The proper perspective ... is that of the average user." *Id.* In reaching that conclusion, *Sauder* cited with approval the *Restatement (Third) of Torts:* "In general, a product seller is not subject to liability for failing to warn or instruct regarding risks and risk avoidance measures that should be obvious to, or generally known by, foreseeable product users." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 2, cmt. j (1997).

There is evidence in the record that Allen was an experienced user of tractors, that he had used this particular tractor to do mowing and bush hog work for approximately two years, that he had mowed the neighbor's property with it the day before, that he was safety conscious regarding the tractor, and that he and his father-in-law had reviewed the operating manual. As an experienced tractor user and a person concerned about safety around machinery, Allen would have appreciated the obvious risk of falling off or being thrown from a tractor, particularly a tractor doing bush hog work. Consequently, based upon the holdings in *Caterpillar* and *Sauder,* we hold, as a matter of law, Virnau had no

duty to warn a person experienced with tractors, and with this tractor, in particular, of the open and obvious risk of falling off or being thrown from a tractor that had no seat belt or ROPS. We hold that the trial court did not err in granting summary judgment in favor of Virnau on the negligent and gross negligence causes of action. In so doing, we also point out that this finding is not inconsistent with our holding that the trial court erred in granting summary judgment in favor of Virnau on the strict liability/design defect cause of action. As the Supreme Court held in *Shears*, "liability for a design defect may attach even if that defect is apparent." 911 S.W.2d at 383.

We affirm the trial court's summary judgment on the negligence/gross negligence causes of action; we reverse the trial court's summary judgment on the strict liability/design defect cause of action and remand that cause to the trial court. We further remand the strict liability/marketing defect cause of action to the trial court, since Virnau did not seek summary judgment on that ground and appellants have challenged it on appeal.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.