In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-063 CV


____________________



DARRELL WILLIAMS AND TONI L. WILLIAMS, Appellants



V.



PRECISION TIRE & ALIGNMENT, INC., and CHRIS ESSEX, Appellees






On Appeal from the County Court at Law 


Orange County, Texas


Trial Cause No. 14421






O P I N I O N


 This case arises from a foreclosure by Precision Tire & Alignment, Inc., and its
owner, Chris Essex (appellees) on a vehicle owned by Darrell and Toni L. Williams (the
Williams) and financed by Arcadia Financial Ltd. See Tex. Prop. Code Ann. §§ 70.001,
70.006 (Vernon Supp. 2002). Arcadia filed suit against the Williams, Precision Tire,
Chris Essex, and the Texas Department of Transportation seeking damages for breach of
contract, declaratory judgment, and damages for conversion of their security interest. The
Williams filed a cross-complaint alleging breach of contract, conversion, usury, fraud, and
wrongful foreclosure against Precision Tire and Chris Essex. Subsequently, Arcadia non-suited all defendants. 

 Appellees moved for summary judgment against the Williams on the grounds (1)
the sale of the vehicle was valid because Precision Tire complied with all applicable
statutory provisions when it executed and foreclosed on a statutory Worker's Lien on the
vehicle; (2) the vehicle was not converted by Precision Tire because it held a valid
statutory lien that gave it the right to possess the vehicle and subject it to a lien foreclosure
sale. Appellees also moved for summary judgment on the basis of "no evidence" under
Tex. R. Civ. P. 166 a(i) as to certain causes of action. Appellees argued there was no
evidence they loaned the Williams money, an element of the cause of action for usury. 
Appellees argued there was no evidence of an offer or acceptance, an element of breach
of contract. Lastly, appellees argued there was no evidence of any of the elements of the
cause of action for fraud. See Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 674
(Tex. 1998). 

 The trial court granted appellees' motion without specifying the grounds upon which
summary judgment was granted. Therefore, if any of the several grounds alleged in
appelles' motion for summary judgment are meritorious, the summary judgment will be
affirmed. See Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.
1995); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

 When reviewing a summary judgment on appeal, this court must determine whether
the movant carried his burden of showing that there is no genuine issue of material fact and
that he is entitled to judgment as a matter of law. Nixon v. Mr. Property Management Co.,
Inc., 690 S.W.2d 546, 548-49 (Tex. 1985). In deciding whether or not there is a disputed
fact issue precluding summary judgment, evidence favorable to the non-movant is to be
taken as true and every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in his favor. Id. We review a no-evidence summary judgment
under an equivalent standard. "We consider all the evidence in the light most favorable
to the adverse party, disregarding all contrary evidence and inferences. A no-evidence
summary judgment is improper if the adverse party has produced more than a scintilla of
probative evidence raising a genuine issue of material fact on each challenged element of
a claim or defense." Vallance v. Irving C.A.R.E.S., Inc., 14 S.W.3d 833, 837 (Tex.
App.--Dallas 2000, no. pet.) (citations omitted). See also Allen v. W.A. Virnau & Sons,
Inc., 28 S.W.3d 226, 231 (Tex. App.--Beaumont 2000, pet. denied).

 The Williams present four issues on appeal. They contend there are fact issues
precluding summary judgment on their claims for wrongful foreclosure, conversion,
breach of contract, and fraud. The Williams do not argue a fact issue exists precluding
summary judgment on their usury claim. Accordingly, we must affirm the trial court's
order granting summary judgment on that cause of action.

 Attached to the response to appellees' motion for summary judgment as evidence
is deposition testimony taken from Charles Essex, Darrell Williams, and Toni Williams. 
Essex agreed the lien arose when the work was completed and Williams was billed. Essex
testified the work order shows the repairs were completed September 30, 2000. The notice
of lien foreclosure contended the repairs were completed September 5. Essex explained
that as a typographical error. According to Essex, he "never told them that date was when
it was completed." Thus appellees' assertion that "Appellants' conclusory statement that
a worker's lien did not exist until September 30th is unsupported by any evidence in the
record" is flatly contradicted. Accordingly, the notice of lien foreclosure, dated October
24, was sent before close of the thirty day period after charges accrued, and the 31st day
after notice could have been given was not November 24, but November 30. 

 The work order reflects the total amount of the repairs was $2,222.67. The notice
of lien foreclosure demanded $2,322.67. According to Essex, the $100 over the repair
order was the "lien company" fee. Williams had paid $100 before work began, when the
transmission was ordered. On October 7, Williams made a payment of $200. On October
11, Williams made another $200 payment. The demand in the notice of lien foreclosure
did not account for the $500 the Williams had already paid.

 After the notice of foreclosure was sent, appellees accepted three more payments
from the Williams. On October 26, a payment for $249 was made by Williams. Another
payment was made by Williams on November 2 for $400. On November 22, $400 was
paid. Thus, by November 29, the 61st day after the lien arose, the Williams had paid
$1,549 and owed a balance of $673.67 according to the original repair order, or $773.67
per the notice of lien foreclosure. Toni Williams testified they went to Precision Tire on
November 30 with $1,200 to pick up the vehicle. (1) 

 Section 70.006 (f) requires "a public sale." Essex testified he purchased the car on
November 27. Essex testified the sale was public but when asked, "What did you do to
make it a public sale?", he said "I mean, anybody could have bought it at that point in time
for the repairs." Essex testified he did not advertise the sale and it was held at the shop.
He purchased the vehicle for the remainder owed on the repairs but could not recall the
amount. (2) When asked how the sale was conducted, Essex answered, "It was not a public
auction. . . . They told me all I had to do was take it down to the courthouse and sign the
papers over. The papers were signed over in my brother's name - these papers here. So,
I had to bring it over into my name at that point in time." Essex testified he went to the
Orange County courthouse and changed the title into his name. Essex testified the tax was
over $200 and was calculated "off the paperwork that said 22 or whatever is on there or
2300" but that he only paid the remainder that was due for the vehicle. (3) 

 The summary judgment evidence raises fact issues concerning Essex's compliance
with section 70.006. The notice of foreclosure was premature and provided an incorrect
date on which foreclosure could occur. Further, the foreclosure and the sale occurred
three days before the 61st day after charges accrued. There is a fact issue as to whether
the sale was public since the record does not indicate anyone other than Charles Essex
knew of its occurrence. Accordingly, we find the Williams presented summary judgment
evidence raising a fact issue on their claim for wrongful foreclosure. 

 We further find the Williams presented summary judgment evidence raising a fact
issue on their claim for conversion. "[A] proper tender of the amount claimed in the
notice is sufficient; the possessory lien expires upon tender the same as if the tendered
amount had been retained; the subsequent refusal to surrender the car to the lienholder
constitutes conversion." See Collision Ctr. Paint & Body, Inc. v. Campbell, 773 S.W.2d
354, 357 (Tex. App.--Dallas 1989, no writ). Taking into account the payments already
made, there is evidence the Williams' tendered more than the amount claimed due in the
notice on the day before foreclosure could have properly occurred.

 Regarding breach of contract, the only element challenged in appellees' no evidence
motion for summary judgment was offer and acceptance. Therefore we do not address
appellees' arguments on appeal as to any other elements. Since those elements were never
presented as grounds in the motion, the trial court could not properly have granted
summary judgment on those bases. See Tex. R. Civ. P. 166a(i).

 In their response to the motion for summary judgment, the Williams claimed an
implied contract arose. Darrell Williams testified "we had an agreement that we were
making payments." According to Darrell, Essex told him that he would accept the
payments and Darrell asked him "to set me up some payments." Darrell started making
payments and Essex accepted them. Darrell testified there was no set amount and no
deadline. "An implied contract arises from the dealings of the parties, from which the
facts show that the minds of the parties met on the terms of the contract without any legally
expressed agreement thereto." Angeles v. Brownsville Valley Regional Med. Ctr., Inc.,
960 S.W.2d 854, 859 (Tex. App.--Corpus Christi 1997, no writ). The evidence of the
course of dealing between the Williams and Essex, along with Darrell's testimony,
constitutes more than a scintilla of evidence that a "meeting of the minds" occurred and
an implied contract arose. We find a fact issue was raised on the breach of contract claim.

 Appellees challenged each element of fraud in their no evidence motion. The
Williams contended "Essex's actions [in] continuing to accept payments silently after
sending the October 24, 2000, letter are material misrepresentations that implied he would
continue to accept payments. Essex's demand of an unknown amount to be paid in two
days after more than two months of accepting payments is unconscionable." Essex's
testimony demonstrates he accepted three partial payments from the Williams after he sent
the notice of foreclosure. The record indicates that those payments were part of a course
of dealing between the parties, that Essex knew at that rate the Williams would not have
paid the full amount in time to avoid foreclosure, and that Essex failed to inform the
Williams of that fact. The Williams relied upon Essex's actions by continuing to make
periodic payments as they had in the past. Thus by November 24 they had paid another
$1,049, which they lost when Essex foreclosed anyway. Accordingly, we find there is
more than a scintilla of evidence to support each element of the Williams' cause of action
for fraud.

 For all of the above reasons, we reverse the judgment of the trial court as to the
causes of action for wrongful foreclosure, conversion, breach of contract, and fraud. The
judgment of the trial court is affirmed only as to the cause of action for usury.

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

 PER CURIAM


Submitted on November 1, 2002

Opinion Delivered November 21, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Darrell Williams testified that after he received the foreclosure notice on October
27, Essex orally demanded an additional $750 for storage fees and gave Williams a new
total of $1,643. Williams then made a $400 payment on November 22, which would have
left a balance of $1,243. 
2. An attachment to the Williams' motion for new trial recites Chris Essex purchased
the 1996 Ford Explorer for the amount of $870. Appellees' brief recites this amount
without challenging it. 
3. The evidence before the trial court does not include the value of the vehicle.