In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-572 CV


____________________



ENTERGY GULF STATES, INC., Appellant



V.



KEN ISOM, AND SUZANNE ISOM, INDIVIDUALLY AND AS


REPRESENTATIVES OF THE ESTATE OF THEIR 


DECEASED SON, SHANE ISOM, Appellees






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-169,669






OPINION


 Ken and Suzanne Isom sued Entergy Gulf States, Inc. ("Entergy") after Shane Isom,
their thirteen-year-old son, was fatally injured in an accident occurring on Entergy's right
of way. Entergy filed three motions for summary judgment and the trial court denied
them. Subsequently, the trial court certified its order for immediate interlocutory appeal
pursuant to Section 51.014(d-f) of the Texas Civil Practice and Remedies Code. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(d-f) (Vernon Supp. 2004). This Court granted
Entergy's request for permission to pursue its interlocutory appeal in which Entergy brings
three issues. Issue one contends the attractive nuisance doctrine does not apply in this
case. Issue two asserts Entergy did not act with gross negligence and issue three maintains
the Isoms cannot recover punitive damages because their claim for compensatory damages
fails. We will reverse and render.

Background


 This case involves a tragic accident that resulted in a family's loss of a beloved son.
When the accident occurred, Shane Isom was almost fourteen; his birthday was two weeks
away. He and two friends, Mitchell Duchamp and Aaron Little, were riding the Isoms'
new all terrain vehicle ("ATV") on Entergy's right of way. At the time of the accident,
Mitchell was driving the ATV, Shane was sitting in the middle, and Aaron was sitting at
the back. Mitchell tried to avoid ruts in the center of the right of way. In doing so, he
took a route under an anchored guy wire. Looped around the anchored guy wire was a
broken guy wire. The looped wire had been broken for approximately a year before the
accident and for a while was hanging freely. For six to seven months before the accident,
however, the broken wire had been looped around the anchored guy wire. The tracks of
the ATV indicated it passed under the looped guy wire. Shane Isom was knocked off the
ATV. He was found lying a few feet from the wire with neck injuries from which he
subsequently died. 


Standard of Review


 Entergy sought a traditional summary judgment on the Isoms' attractive nuisance
cause of action. See Tex. R. Civ. P. 166a. On the gross negligence cause, Entergy filed
motions for both a traditional summary judgment and a no-evidence summary judgment. 
See id.; see Tex. R. Civ. P. 166a(i). 

 We review summary judgments de novo. Chavez v. City of San Antonio ex rel. City
Pub. Serv. Bd. of San Antonio, 21 S.W.3d 435, 438 (Tex. App.--San Antonio 2000, pet.
denied). Entergy, as the movant, has the burden of showing no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law. See Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985). When reviewing a traditional
summary judgment, we take as true all evidence favorable to the nonmovant. See 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223, (Tex. 1999); see Tex. R. Civ. P. 
166a. We indulge every reasonable inference and resolve any doubts in the nonmovant's
favor. Id. A defendant who disproves an essential element of the plaintiff's cause of
action as a matter of law is entitled to summary judgment. Doe v. Boys Clubs of Greater
Dallas, Inc., 907 S.W.2d 472, 476-77 (Tex. 1995). "After the defendant produces
evidence entitling it to summary judgment, the burden shifts to the plaintiff to present
evidence creating a fact issue." Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).

 Under the no-evidence summary judgment rule, the movant may move for summary
judgment if there is no evidence of one or more essential elements of a claim or defense
on which the nonmovant would have the burden of proof at trial. Allen v. W.A. Virnau
& Sons, Inc., 28 S.W.3d 226, 231 (Tex. App.--Beaumont 2000, pet. denied); see Tex. R.
Civ. P. 166a(i). The motion must state the elements for which there is no evidence, and
the reviewing court must grant the motion unless the nonmovant produces summary
judgment evidence raising a genuine issue of material fact. See id. 

 As a no-evidence motion for summary judgment is essentially a pretrial motion for
instructed verdict, the appellate court applies the same standard of review. Allen, 28
S.W.3d at 231. We first consider all the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. Id. The non-movant defeats
the no-evidence motions by producing more than a scintilla of probative evidence raising
a genuine issue of material fact on each element of a claim or defense challenged by the
movant. Id. More than a scintilla exists when the evidence is such that reasonable and
fair-minded persons may differ in their conclusions. Id. 

Attractive Nuisance


 As to trespassers, a premises owner or occupier owes only the duty not to injure the
trespasser willfully, wantonly, or through gross negligence. Texas Utilities Elec. Co. v.
Timmons, 947 S.W.2d 191, 193 (Tex. 1997) (citing Burton Constr. & Shipbuilding Co.
v. Broussard, 154 Tex. 50, 273 S.W.2d 598, 603 (1954) and Restatement (Second) of
Torts § 333 (1965)). However, an exception to the trespasser rule set forth in section 333
of the Restatement is the attractive nuisance doctrine explained in section 339. See
Restatement (Second) of Torts §§ 333, 339 (1965). (1) Over fifty years ago, the Texas
Supreme Court adopted section 339's statement of the attractive nuisance doctrine. See
Banker v. McLaughlin,146 Tex. 434, 208 S.W.2d 843, 847 (1948). (2) And in Timmons, 947
S.W.2d at 193-94, the Court reiterated its continued approval. Section 339 states:

 A possessor of land is subject to liability for physical harm to children
trespassing thereon caused by an artificial condition upon the land if


 (a) the place where the condition exists is one upon which the
possessor knows or has reason to know that children are likely to trespass,
and

 (b) the condition is one of which the possessor knows or has reason
to know and which he realizes or should realize will involve an unreasonable
risk of death or serious bodily harm to such children, and

 (c) the children because of their youth do not discover the condition
or realize the risk involved in intermeddling with it or in coming within the
area made dangerous by it, and 

 (d) the utility to the possessor of maintaining the condition and the
burden of eliminating the danger are slight as compared with the risk to
children involved, and

 

 (e) the possessor fails to exercise reasonable care to eliminate the
danger or otherwise to protect the children.


Restatement (Second) of Torts § 339 (1965). 


 Whether an attractive nuisance exists is a question of law. Massie v. Copeland, 149
Tex. 319, 233 S.W.2d 449, 454 (1950); Kopplin v. City of Garland, 869 S.W.2d 433, 441
(Tex. App.--Dallas 1993, writ denied). And whether the injured child is so young and
immature that the doctrine protects the child against a condition or danger is also a
question of law. Kopplin, 869 S.W.2d at 441. The doctrine applies only if the danger is
hidden, concealed, or latent and not when it is patent or obvious in order that "care for
children who are unable to recognize patent dangers is not shifted from their parents to
strangers. The limitation avoids imposing on property owners a duty and liability where
otherwise none would exist." Id. (citing Stimpson v. Bartex Pipe Line Co., 120 Tex. 232,
36 S.W.2d 473, 476 (1931)).

 "When the attractive nuisance doctrine applies, the owner or occupier of premises
owes a trespassing child the same duty as an invitee." Timmons, 947 S.W.2d at 193. And
to invitees, a premises owner or occupier must "use ordinary care to reduce or eliminate
an unreasonable risk of harm created by a premises condition of which the owner is or
reasonably should be aware." State Dep't of Highways & Public Transp. v. Payne, 838
S.W.2d 235, 237 (Tex. 1992).

 In issue one, Entergy first contends the attractive nuisance doctrine does not apply. 
Entergy asserts that, because of Shane's maturity, scholastic achievement, and age (almost
fourteen), he appreciated the risks of riding an ATV with passengers, close to poles and
guy wires. Relying extensively on Timmons, Entergy argues Shane's knowledge of the
danger precludes appellees from meeting section 339(c)'s requirements. (3) See Timmons,
947 S.W.2d at 191. 

 In Timmons, a fourteen-year-old boy was electrocuted by an arc of electricity while
he was climbing an electric transmission tower. Id. at 192-93. After spending the evening
drinking beer and malt liquor at a friend's house, the boy climbed the tower, using the
diagonal braces on each side. The tower had no ladder, and the boy's friends and family
had warned him about the dangers of climbing the tower. The utility company had erected
a barricade around the tower to prevent unauthorized persons from scaling the tower and
coming near the power lines and had also posted a warning sign on one corner of the
tower. The sign, however, did not specifically warn of the danger of arcing. Id. at 192. 

 The Timmons Court concluded that "[e]ven without such express warnings, anyone
as old as Billy is charged 'with the knowledge that electric wires are ordinarily dangerous; 
that they should be avoided wherever possible . . . and that it is dangerous to come in close
proximity to them.'" Id. at 194 (quoting Cloud v. Houston Lighting & Power Co., 199
S.W.2d 260, 262 (Tex. Civ. App.--Galveston 1947, writ ref'd n.r.e)). "[I]gnorance of
arcing is not enough to satisfy the third element of the attractive nuisance doctrine, section
339(c) of the Restatement, if the child is aware of the dangers of electricity generally. The
doctrine requires only that the child realize the risk 'in coming within the area made
dangerous' by the condition." Timmons, 947 S.W.2d at 195 (quoting Restatement
(Second) of Torts § 339(c) (1965)). "[A] child who puts himself in such close proximity
to a known danger like a . . . high-voltage electric line so as to risk severe harm cannot
be heard to say that he did not realize the danger because he did not expect harm to occur
exactly as it did." Id.

 In determining the boy, who had been warned repeatedly, was not too young or
immature to appreciate the danger of climbing a tower containing high-voltage power lines,
the Timmons Court noted the attractive nuisance doctrine ordinarily does not apply to 
normal fourteen-year-olds. Id. at 196. And it further acknowledged "the great majority"
of cases applying the doctrine did so when the child involved was not more than twelve
years old. Id. (citing Restatement (Second) of Torts § 339, cmt. c (1965)). However,
the Court declined to put an age limit on beneficiaries of the attractive nuisance doctrine. 
Id. The Court recognized "'that in our present hazardous civilization some types of
dangers have become common, which an immature adolescent may reasonably not
appreciate, although an adult may be expected to do so.' The test is whether 'the child is
still too young to appreciate the danger.'" Id. (quoting Restatement (Second) of Torts
§ 339, cmt. c (1965) (citations omitted)). 


 Under Timmons, we must determine if Shane was too young to appreciate the
danger of riding an ATV on Entergy's right of way, close to guy wires and utility poles.
See Timmons, 947 S.W.2d at 195-96. A factor in this determination is whether the danger
was latent or open and obvious. Kopplin, 869 S.W.2d at 441. We recognize that if he
was aware of the danger generally, the attractive nuisance doctrine does not apply. See
Timmons, 947 S.W.2d at 195-96. We consider both the nature of the danger to be
appreciated as well as Shane's age or maturity. Massie, 233 S.W.2d at 453. We take as
true the evidence favorable to the Isoms and indulge every reasonable inference and
resolve any doubts in their favor. See Rhone-Poulenc, Inc., 997 S.W.2d at 223. If
Entergy has presented evidence entitling it to summary judgment, the burden shifts to the
Isoms to present evidence creating a fact issue. See Walker, 924 S.W.2d at 377.

 The evidence favorable to the Isoms shows the danger of the loose wire was latent. 
The boys could not see the loose guy wire when they left the center of the right of way to
avoid the rough area. The guy wire involved in the accident was looped around an
anchored guy wire. There was adequate room to maneuver an ATV between the straight
guy wire and the pole. Mitchell, the ATV's driver, avoided the main guy wire but did not
see the loose wire when he selected his route to avoid the ruts. Shane's neck came in
contact with the loose wire and he was knocked off of the ATV. Placing covers on guy
wires is a common engineering practice that provides visibility for the wires and protects
them from being struck by vehicles. The loose guy wire had no cover and therefore was
difficult to see. Increasing that difficulty were the ATV's motion and the proximity of the
uncovered loose wire to the main guy wire, which was covered with a broken, white
cover. A vehicle driver's attention would be focused on the covered wire that was marked
as an obstacle rather than the unmarked obstacle, the loose wire. Entergy's maintenance
manager admitted the guy wire was not secured or marked properly. Thus, the evidence
favorable to the Isoms shows the danger of the loose wire was not open and obvious.

 However, Entergy presented substantial evidence supporting its argument that
Shane's maturity, scholastic achievement, and age (almost fourteen) preclude appellees
from meeting section 339(c)'s requirements. Shane's parents testified he was a good
student, making the A-B honor roll and receiving certificates for his reading and math
achievement. Shane was a good baseball pitcher and was active in other sports. He
obeyed his parents and never had been in trouble for violations of the law. Shane's father
watched him operate the ATV for over two weeks and determined Shane was competent
to drive it. Shane's father also testified that Shane was mature enough and experienced
enough to drive the ATV, and that Shane understood the risks of operating the vehicle.
Certain dangers were evidenced in the warning labels on the ATV itself; these warnings
cautioned against persons under sixteen operating the vehicle and also cautioned against
riding as a passenger. 

 Entergy also showed that before the accident occurred Mitchell and Aaron, the two
boys with Shane, appreciated the dangers of riding an ATV. Mitchell, the thirteen-year-old who was driving the ATV at the time of the accident, testified he understood the risks
of operating an ATV; he knew passengers' weight shifts could create problems; he knew
excessive speed could result in a loss of control; he knew if he did not follow the warnings
or operated the ATV improperly, serious injury or death could occur. Aaron also knew
injury could result from not following the warnings; that passengers were not to ride on
an ATV; that passengers' can cause weight shifts and make controlling an ATV difficult;
and that persons under sixteen should not operate an ATV. 

 Entergy's evidence shows Shane was old enough to appreciate the danger of riding
an ATV on Entergy's right of way, close to guy wires and utility poles. See Timmons, 947
S.W.2d at 195-96. Unless appellees presented evidence to the trial court showing Shane
was too young to appreciate this danger, Entergy disproved an essential element of the
Isoms' case and was entitled to summary judgment as a matter of law. Walker, 924
S.W.2d at 377; Doe v. Boys Clubs, 907 S.W.2d at 477. 

 The Isoms argue generally that a thirteen-year-old should not be expected to realize
the danger of an unmarked and improperly configured guy wire that could easily be
overlooked by someone riding an ATV. However, they cite no evidence presented to the
trial court showing Shane was too young to realize the dangers of riding the ATV on the
right of way, a location involving being close to poles and guy wires. Instead, appellees
focus on the lack of a specific age limit for applying the attractive nuisance doctrine and
on the hidden nature of the loose wire. 

 We agree the summary judgment evidence favorable to the Isoms shows it would
have been difficult for Shane to appreciate the danger of the loose wire. But, as explained
in Timmons, ignorance of a specific danger "is not enough to satisfy the third element of
the attractive nuisance doctrine, section 339(c)" if the child is aware of the general danger. 
Timmons, 947 S.W.2d at 195. Here, the specific danger was the loose wire and in
Timmons the specific danger was the arcing of electricity. Here, the general danger was
riding an ATV on the right of way in the vicinity of poles and guy wires and in Timmons
the general danger was electricity. "The doctrine requires only that the child realize the
risk 'in coming within the area made dangerous' by the condition." Id. at 195 (quoting
Restatement (Second) of Torts § 339(c) (1965)). 

 As the Isoms did not present evidence creating a fact issue, Entergy established as
a matter of law that Shane was aware of the dangers of riding the ATV in the vicinity of
poles and guy wires. Thus, Entergy disproved an essential element of the Isoms' attractive
nuisance cause of action, namely section 339(c) of the Restatement (Second) of Torts,
and was entitled to summary judgment that the attractive nuisance doctrine does not apply. 
We need not consider Entergy's argument that section 339(d) of the Restatement
(Second) of Torts also precludes application of the doctrine. Issue one is sustained. 


Gross Negligence


 On the Isoms' gross negligence cause, Entergy filed motions for both a traditional
summary judgment and a no-evidence summary judgment. In its second issue, Entergy
contends the trial court should have granted these motions. We first consider Entergy's
argument relating to its no-evidence summary judgment motion. 

 To establish Entergy's gross negligence, the Isoms must prove two elements: (1)
viewed objectively from Entergy's standpoint, the act or omission must involve an extreme
degree of risk, considering the probability and magnitude of the potential harm to others;
and (2) Entergy must have had actual, subjective awareness of the risk involved, but
nevertheless proceeded in conscious indifference to the rights, safety, or welfare of others. 
See Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). 

 Included in Entergy's motion for summary judgment was the contention there was
no evidence Entergy had actual, subjective awareness of the risk involved, and no evidence
Entergy proceeded with conscious indifference to the rights, safety, or welfare of others.
In order to raise a genuine issue of material fact, the Isoms were required to present
summary judgment evidence that Entergy knew about the danger, but its acts or omissions
demonstrated it did not care. See Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex.
1998); see Allen, 28 S.W.3d at 231.

 Neither in their response to Entergy's motion for summary judgment nor in their
appellate brief do the Isoms contend there is any evidence Entergy had "actual, subjective
awareness" of the loose wire. Issue two is sustained. 

Punitive Damages


 In its third issue, Entergy correctly contends the Isoms cannot recover punitive
damages where their compensatory damage claim is precluded as a matter of law. See
Wright v. Gifford-Hill & Co., Inc., 725 S.W.2d 712, 713-14 (Tex. 1987). Issue three is
sustained.

 The trial court's order denying Entergy's motions for summary judgment on the
issues of attractive nuisance and gross negligence is reversed and judgment is rendered that
the Isoms take nothing.

 REVERSED AND RENDERED.


 

 ______________________________

 STEVE MCKEITHEN Chief Justice


Submitted on April 29, 2004

Opinion Delivered August 12, 2004

Before McKeithen, C.J., Burgess and Gaultney, JJ.


DISSENTING OPINION


 I respectfully dissent. Entergy only asks this court to consider whether the
"attractive nuisance" doctrine applies to this case. This is certainly an issue because the
status of Shane Isom determines the duty owed to him. (4) I believe there is some
controverted evidence about Shane's level of maturity; thus whether the doctrine applies
requires a factual resolution by the jury. 

 However, there is an additional reason the denial of the summary judgment should
be affirmed. Without naming it as such, the Isoms present the "gratuitous licensee"
doctrine. In their original petition, the Isoms state:

 At all times material to the incident . . . the Interurban right-of-way
was heavily traveled by people of all ages operating various motorized
vehicles . . . While Defendant herein maintains the Interurban right-of-way
is private property, Defendant failed and/or refused to place any warning
signs, barriers and/or gates on their property to deter people from entering. 
Further Defendant failed and/or refused to erect "no trespassing" and/or
"keep off property" and/or "private property" signs. Through their
actions/inactions, Defendant allowed the general public to use this property
without restriction.

 At this time of the incident, there was a dangerous condition on the
Interurban right-of-way of which Defendant knew or should have known. .
. . Defendant knew or had reason to know that individuals of all ages,
including children, would frequent the area of the right-of-way where this
dangerous condition existed. 


 In their response to Entergy's motion for partial summary judgment, the Isoms
argued "Entergy's improperly marked and configured guy wires created an unusual and
deceptive hazard" and "it was well known that the interurban right-of-way was a popular
place for children to ride ATVs." Again, this speaks in terms of the "gratuitous licensee"
doctrine.

 This court in Murphy v. Lower Neches Valley Authority, 529 S.W.2d 816, 820 
(Tex. Civ. App.--Beaumont 1975), rev'd on other grounds, 536 S.W.2d 561 (Tex. 1976)
recognized the "gratuitous licensee" doctrine stating:

 While the term of "gratuitous licensee" is not in common usage in Texas in
cases of this nature, it has been defined as "one whose presence upon the
premises is solely for the visitor's own purpose in which the possessor of the
property has no interest, either business or social, and to whom the privilege
of entering is extended as a mere favor by express consent or by general
custom." Gonzalez v. Broussard, 274 S.W.2d 737, 738 (Tex.Civ.App.--San
Antonio 1954, writ ref'd n.r.e.) (citing s 331 of the Restatement of Torts). 
That particular section of the Restatement was omitted in the second edition
but was carried over in substantially the same terms into s 330 (comment
h(1)). In Gonzalez, the suit was brought on behalf of a minor who had
tripped over some rocks which had been placed on the playground of a
drive-in theater by others. The owner had allowed other children to play on
the premises; he knew of the presence of the rocks which the children
brought, and such practice had continued for a long period of time. The
child was held to be a "gratuitous licensee."

 Other examples of "gratuitous licensees" include situations where a
trespass has been tolerated for such a sufficient period of time that the public
believes it has the "permission" of the possessor to use the property, e.g.,
such as the use of a pathway through a coal company's property [Markovich
v. Jefferson Coal & Coke Corporation, 146 Pa.Super. 108, 22 A.2d 65
(1941)]; where people have used a railroad's right-of-way for a period of
time without manifested objection from the company, those people have been
classified as gratuitous licensees rather than trespassers [Louisville &
Nashville Ry. v. Blevins, 293 S.W.2d 246 (Ky.App.1956; accord: Gulf, C.
& S.F. Ry. Co. v. Matthews, 99 Tex. 160, 88 S.W. 192 (1905); Jara v.
Thompson, 223 S.W.2d 941 (Tex.Civ.App.--San Antonio 1949, writ ref'd)]. 
A gratuitous licensee has also been succinctly defined as a licensee who is
"not a business visitor." Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693,
695, 25 A.L.R.2d 592 (1951).


 Clearly this doctrine was raised by the Isoms and not addressed by Entergy in its
motion for partial summary judgment. As stated by our Supreme court in McConnell v.
Southside Independent School District, 858 S.W.2d 337, 342 (Tex. 1993):

 When the motion for summary judgment clearly presents certain
grounds but not others, a non-movant is not required to except. This
distinction was recognized and correctly resolved in Roberts v. Southwest
Texas Methodist Hospital, when the court held:


 When a motion for summary judgment asserts grounds A and
B, it cannot be upheld on grounds C and D, which were not
asserted, even if the summary judgment proof supports them
and the responding party did not except to the motion. 


 811 S.W.2d at 146. Why should a non-movant be required to except to a
motion expressly presenting certain grounds and not others? The only effect
of such a rule would be to alert the movant to additional unasserted grounds
for summary judgment. 


 In this context, the majority should not have issued a rendition. They are in effect
rendering a final summary judgment which includes more relief than was requested in the
motion. The proper judgment should be a rendition on the "attractive nuisance" doctrine
issue, but as to all causes of action and issues not expressly urged in the motion for
summary judgment, i.e, the "gratuitous licensee doctrine" issue; there should be a remand. 
IBP, Inc. v. Klumpe, 101 S.W.3d 461, 468-469 (Tex. App.--Amarillo 2001) (citing
Bandera Elec. Coop., Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997)).

 I would affirm the denial of the summary judgments.


 ______________________________

 DON BURGESS

 Justice


Dissent Delivered

August 12, 2004
1. Section 333 also sets out other exceptions to the general trespasser rule; they
include sections 335 and 337. Section 335 is entitled "Artificial Conditions Highly
Dangerous to Constant Trespassers on Limited Area," and Section 337 is entitled
"Artificial Conditions Highly Dangerous to Known Trespassers." See Restatement
(Second) of Torts §§ 335, 337 (1965). 
2. We find no case in which the Texas Supreme Court has adopted other exceptions
to section 333, the general trespasser rule. However, in State v. Shumake, 131 S.W.3d
66 (Tex. App.-- Austin 2003, no pet. h.), a case involving the Recreational Use Statute,
the Austin Court of Appeals recently considered sections 335 and 337. Shumake, 131
S.W.3d at 70, 77. Noting its reliance on the second Restatement of Torts and the Texas
Supreme Court's definition of gross negligence in Louisiana Pacific Corp. v. Andrade, 19
S.W.3d 245, 246-47 (Tex. 1999), the Shumake Court imposed on landowners "a higher
duty of care to known trespassers injured by artificial conditions that pose a risk of serious

bodily harm of which the landowner knows or should know." Shumake, 131 S.W.3d at
80. 
3. "[T]he children because of their youth do not discover the condition or realize the
risk involved in intermeddling with it or in coming within the area made dangerous by
it[.]" Restatement (Second) of Torts § 339(c) (1965).
4. The extent of a landowner's liability for injuries caused by a condition existing on
the land depends on the status of the injured person. Thus, the scope of a landowner's
duty depends on whether, at the time of the injury, the person on the land was an invitee,
a licensee, or a trespasser.

 To invitees, the landowner owes a duty to exercise reasonable care to keep the
premises in a reasonably safe condition for use by the invitee. To licensees, the landowner
owes a duty to warn of or to make safe hidden dangers known to the landowner and a duty
not to intentionally, wilfully, or through gross negligence cause injury. And to trespassers,
a landowner owes only a duty not to intentionally, wilfully, or through gross negligence
cause injury. 

 While this traditional classification system has been subject to debate, it remains the
law in Texas. 

Mellon Mortg. Co. v. Holder, 5 S.W.3d 654, 660 (Tex. 1999)(Enoch, J., concurring).