**Bernard DODD, Petitioner,**

v.

**TWIN CITY FIRE INSURANCE COMPANY, Respondent.**

No. B–6007.

Supreme Court of Texas.

Jan. 19, 1977.

Daves & Rodkin, Larry R. Daves, Tyler, for petitioner.

William Drew Perkins, Lufkin, for respondent.

GREENHILL, Chief Justice.

This is a workmen's compensation case brought by Bernard Dodd for injuries suffered as an employee of Lone Star Phosphate Company [Lone Star Phosphate] which was insured by Twin City Fire Insurance Company [insurance company].

The insurance company asserted as a defense that Lone Star Phosphate was not the employer of Dodd at the time of the injury. It is contended that at such time, Dodd was

a borrowed employee of another company, Texas Farm Products Company [Texas Farm]. Texas Farm is a nonsubscriber under the Workman's Compensation Act. Texas Farm, was named as an additional defendant in the plaintiff's petition; but it was not served with citation, did not appear, and was not noticed in the trial or in the judgment rendered by the trial court.

The case was tried to a jury which found that at the time of his injury, Dodd was the employee of Lone Star Phosphate and was not the borrowed employee of Texas Farm.

The trial court rendered a judgment for the plaintiff and against the insurance company on the jury's verdict. The court of civil appeals reversed. It rendered judgment in favor of the insurance company. 535 S.W.2d 416. That court concluded that as a matter of law, Dodd was an employee borrowed by Texas Farm. The court of civil appeals also found that the trial court intended to and did dispose of all parties legally before it, including Texas Farm, which on its own motion, the Court noticed had been named in the plaintiff's petition.

As we read the record, there is evidence to support the jury's findings that Dodd was an employee of Lone Star Phosphate and was not a borrowed employee. Accordingly, we reverse the judgment of the court of civil appeals; and, for reasons later given, we remand the cause to the district court for a new trial. We also hold, as discussed below, that the court of civil appeals was incorrect in its holding that Texas Farm was a party properly before the court.

Two corporations, Lone Star Phosphate and Texas Farm, are owned by the same six people and are located on adjacent lots in Nacogdoches, Texas. They have the same president, secretary and treasurer, personnel manager, and, except for two people, the same board of directors. They occupy the same business office. They are in companion businesses. Texas Farm manufactures fertilizer, and Lone Star manufactures phosphate which is moved next door and becomes a part of the Texas Farm fertilizer. Employees and their foreman had been moved from one company to another, at least on the books; and this is the source of the borrowed servant problem. One man is the supervisor of the laborers at both plants; and as far as Dodd is concerned, the same man was his foreman at both plants.

On Friday, April 13, 1973, Dodd reported to Lone Star Phosphate for his regular shift of common labor which ran from 6:00 a. m. to 2:00 p. m. He began his work on the Lone Star premises and continued the same duties he had performed during his shift the day before, including the painting of one of the buildings. About 9:00 a. m., McShan, Dodd's foreman, asked Dodd if he would go next door to the Texas Farm premises to move some potash. This involved blasting a sizable amount of potash with dynamite and then moving it with a payloader. Dodd said he would, and he did.

Dodd went to the Texas Farm premises, got 12 sticks of dynamite, and blasted some of the material. He was then directed by McShan to move the material with a "payloader." While he was doing this, about 2000 pounds of a wall of material collapsed, and Dodd was partially buried for an hour and a half.

Our readings of the record convince us that reasonable minds could differ as to whether Dodd had switched, or had been completely switched, from the employment of Lone Star to that of Texas Farm.

■ In passing upon the question of "no evidence" to support the jury's findings that Dodd remained an employee of Lone Star and was not the borrowed servant of Texas Farm, the evidence is to be viewed in the light most favorable to the verdict, and evidence contrary to the jury's verdict is to be disregarded.

■ The elements of the "borrowed servant doctrine" have previously been established and will not be restated here. One of the basic elements, in the absence of a contractual provision, is which employer has the right to control the manner and details of the employee's work. *J. A. Robinson Sons Inc. v. Wigart*, 431 S.W.2d 327 (Tex.

1968); *Insurors Indemnity & Insurance Co. v. Pridgen,* 148 Tex. 219, 223 S.W.2d 217 (1949).

Dodd had worked at one or the other of these companies for many years. Some 14 years before the accident in question, he had worked for Texas Farm and was carried on its books as an employee. He was transferred to Lone Star Phosphate in 1967; but there was a considerable time lag when he was still carried on the books as an employee of Texas Farm, i. e., in this period, he worked for Lone Star but ,was paid with Texas Farm checks. From this the jury could infer that "the books" of the companies were not always conclusive as to which corporation its employees worked for.

Since 1967, he had been an employee of Lone Star, the company which carried compensation insurance. He had received all his pay checks from Lone Star. His income tax and social security records were carried as a Lone Star employee.

His immediate boss or foreman was Jerry McShan, and this was so whether Dodd worked for Lone Star or Texas Farm. He did whatever McShan told him and was subject to his control. McShan testified that on the day of the injury he [McShan] worked for Texas Farm,—the uninsured corporation; but as will be indicated below, in view of McShan's testimony and the interlocking workings of the two companies, we are of the view that reasonable minds could differ as to whether McShan had been working on the day of the accident for Lone Star or for Texas Farm. He did testify that "on this particular day," he was employed by Texas Farm. He also testified that during the last part of March (before the accident on April 13), and during the week of Dodd's injury, he [McShan] worked at the Lone Star Phosphate plant. McShan apparently made a judgment as to which company Dodd was working for because he made an entry on a time chart as to which "department" Dodd was working for. The time records were not produced at the trial.

In addition to McShan's being Dodd's foreman, there was testimony that Dodd's supervisor, Riddle, was supervisor for *both* Lone Star and Texas Farm. Riddle had asked McShan to have Dodd go over to do work on the Texas Farm premises.

Dodd had, on several prior occasions, performed services on the premises of Texas Farm while working his regular shift at Lone Star Phosphate. As stated, on all occasions when he worked at Texas Farm, he received his checks from Lone Star. Mr. Beard, personnel director of both companies, testified that the companies had an agreement whereby Texas Farm reimbursed Lone Star for time its employees spent working for Texas Farm. No records were produced to substantiate this testimony, and there was no corroborating proof that Texas Farm actually reimbursed Lone Star on this occasion.

The court of civil appeals placed much emphasis on Dodd's testimony that "they [Texas Farm] borrowed me up there;" and that from this, it was inferred that Dodd conceded [or judicially admitted] that he was working for Texas Farm as a borrowed servant when he was injured. Dodd, a married man with children and with a 10th grade education, who worked as a laborer for $2.37 per hour, further testified that what he meant was that he was a Lone Star employee, but had been asked to go next door and to work on the premises of Texas Farm,—"but I'm still on Lone Star's time." On redirect examination, he made it clear that he did not mean that he was a borrowed servant in a legal sense, if indeed he was capable of forming that correct conclusion upon which the learned courts below disagreed. He insisted that he did not have a contract with Texas Farm, did not agree to become a Texas Farm employee, and did not acquiesce in such change of employers.

█ It is possible, and legally permissible by the use of corporate veil, for a group of people to operate separate companion corporations and to protect the workers of only one of its "departments" with workman's compensation. No imputation of improper conduct is intended to be cast here. It is disturbing that it elects not to carry compensation coverage on the part of the operation which engages in the use of dyna-

mite and other dangerous activities, and then "borrows" workmen from its protected department to go do its dangerous work without insurance coverage. It is understandable that the courts would look carefully at such "borrowed servant" operations. The burden of proof here was on the insurance company to prove as a matter of law that Dodd had ceased to be an employee of Lone Star Phosphate and was the borrowed servant, and under the control, of Texas Farm when Dodd was injured. In our opinion, it failed to make such conclusive proof. Stated differently, we hold that there is evidence to support the jury's finding that Dodd remained the employee of Lone Star, and that he was not the borrowed servant of Texas Farm.

As stated, the court of civil appeals held that there was no evidence to support the jury's findings in favor of the plaintiff. It also added in its opinion that if the question were reached, it would also hold that the evidence was *insufficient* to support the findings. This "insufficiency" finding would result in a new trial of the case.

■ Notwithstanding this additional statement by the court of civil appeals, this Court has the power to remand the cause to the court of civil appeals for it to reexamine its conclusion as to the sufficiency of the evidence. In some instances, there may be good reason to ask the intermediate court to have another look at the case. Calvert and Hatchell, *Some Problems of Supreme Court Review,* 6 St. Mary's Law Journal 303 at 326 et seq. (1974).

In this particular instance, however, the opinion of the court of civil appeals is adamant as to its evaluation of the record. We think that it would serve no useful purpose to call on that court to review again its opinion as to the sufficiency of the evidence. The judgment of that court will, therefore, be reversed, and the cause remanded to the district court for a new trial. *See Stanfield v. O'Boyle,* 462 S.W.2d 270 at 272 (Tex.1971).

■ One other matter remains. The court of civil appeals, on its own motion, noticed that Texas Farm had been named as a defendant; and it presumed that "all parties," i. e., Texas Farm, had been disposed of by the trial court's judgment. It cited our opinion in *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex.1966). In the *North East* case, the defendant Aldridge was served with process, filed an answer, and asserted a cross action. The third party defendant King-O-Hills was also served, and it filed an answer to the cross-action. Both defendants were legally before the court. Our holding was that when a judgment not intrinsically interlocutory in character is rendered, it will be presumed for purposes of appeal that the trial court intended to, and did, dispose of all parties *legally before it,* and of all issues made by the pleadings between the parties.

*North East* is distinguishable here. While Texas Farm was named a defendant, it is conceded that it was not served citation; it did not waive service; it did not file an answer or any other type of pleading; it did not appear, and it was not represented by counsel. With admirable candor, the single counsel for *the* defendant insurance company, told us on oral argument that he did not represent Texas Farm in this case; that indeed he *could not,* because there was a conflict of interest. The trial court repeatedly referred to "the defendant," and the judgment clearly recites that "came on to be heard . . . *the defendant* " insurance company. The judgment is silent as to Texas Farm, and there are no words such as "and others" or "et al." to indicate other parties.

Texas Farm was, therefore, not legally before the court. The trial court had no jurisdiction over it, and no judgment could properly have been rendered for or against it. Rule 124, Texas Rules of Civil Procedure; *Levy v. Roper,* 113 Tex. 356, 256 S.W. 251 (1923).

If we are to presume anything here, it would be that the trial court dismissed Texas Farm from the suit. We would not, on appeal, as in the *North East* case, presume that the trial court rendered a judgment for or against Texas Farm, and neither could

the court of civil appeals. It erred in doing so.

The judgment of the court of civil appeals is reversed, and the cause is remanded to the district court for a new trial.