Wilma L. ARGUBRIGHT, Individually and as Next Friend of Kurt Argubright, a Minor, etc., et al., Plaintiffs–Appellees Cross–Appellants,

v.

BEECH AIRCRAFT CORPORATION, Defendant–Appellant Cross–Appellee.

No. 88–2177.

United States Court of Appeals, Fifth Circuit.

March 28, 1989.
Rehearing Denied April 24, 1989.

Michael W. Huddleston, R. Brent Cooper, Jim E. Cowles, Cowles & Thompson, Dallas, Tex., for defendant-appellant cross-appellee.

Richard N. Countiss, John Howie, Charles McGarry, Law Offices of Windle Turley, Dallas, Tex., for plaintiffs-appellees cross-appellants.

Before CLARK, Chief Judge, HIGGINBOTHAM, Circuit Judge, and LITTLE,* District Judge.

LITTLE, District Judge:

This diversity action raises the question under Texas law of when a potential hazard in a product may be deemed so open and obvious as to obviate any duty of the manufacturer to warn prospective users. Finding that the instant hazard was sufficiently obvious, we reverse the judgment entered by the district court against the manufacturer.

The fatal injuries which gave rise to this lawsuit occurred on 27 April 1982 when the plane carrying the decedents, James L. Ar-

gubright and Peter J. Kerckhof, crashed just after takeoff. Argubright was acting as pilot, under the direction of Kerckhof, the training instructor. The two were operating a plane manufactured by Beech Aircraft Corporation ("Beech"), known as the Musketeer model B–23, and had taken off and landed in the same plane several times prior to the accident on the same day.

The parties agree that the accident occurred when, for some reason, the pilot's seat occupied by Argubright was allowed to be unlocked during the takeoff. The mechanism for position adjustment of the Musketeer pilot's seat functions similarly to that of an automobile seat. The seat slides fore and aft on a pair of runners, and locks into position when a pin on the seat drops into one of several holes spaced intermittently along the length of the runner. A pilot desiring to adjust his seat must manually unlock and slide the seat into position. The pilot must then release the positioning control, and slide the seat forward or back a slight amount until it locks into place. Just as a car seat, the pilot's seat audibly "clicks" into position when it locks.

The parties dispute the effect of an unlocked seat. The plaintiffs contend that an unlocked seat could go unnoticed until pushed by takeoff forces, thus making accidents more likely. Beech, on the other hand, points to considerable evidence that the seat would slide during more gentle pre-takeoff maneuvers, thereby alerting the pilot or else causing the seat to lock automatically. Beech argues that Argubright must therefore have unlocked his seat and attempted to reposition it during the actual takeoff. The plaintiffs dispute that claim, contending that Argubright had unlocked the seat prior to takeoff and then innocently failed to lock it.

At any rate, the forces of the takeoff caused Argubright's seat to slide suddenly and sharply backward. This movement caused the steering controls being held at the time by Argubright to be pulled back simultaneously with Argubright, thus re-

---

* District Judge of the Western District of Louisiana, sitting by designation.

sulting in abrupt and uncontrolled changes in direction of the aircraft. The plane then stalled, spun to the left, and crashed at an angle virtually perpendicular to the ground.

The survivors filed this products liability action against Beech, alleging theories of both strict liability and negligence. The plaintiffs argued first that Beech defectively designed the pilot's seat in such a manner as to allow the seat to slide all the way back on its runner, rather than automatically relocking, if left unlocked prior to takeoff by the pilot. The jury returned a verdict stating that the seat mechanism was, in fact, not defectively designed, and thus ruled out the strict liability claim. The jury did, however, agree with the plaintiffs' second allegation, that Beech negligently failed to warn the decedents of the risk of leaving the seat unlocked, or to instruct in the pre-flight checklist that the seat be locked and left locked prior to and during the takeoff. The jury further assessed 30% comparative negligence against Argubright alone, and awarded a net amount of $375,000 to Argubright's survivors, and $500,000 to Kerckhof's widow. Beech filed a post-trial motion for judgment n.o.v., which was denied by the district court.

On appeal, Beech argues that the district court erroneously denied the motion for judgment n.o.v. Beech urges that Beech could not have been negligent because the district court should have found, as a matter of law, that Beech possessed no duty to warn Argubright of the risks of failing to lock properly the pilot's seat. Beech also argues that it satisfied any duty that may have existed by supplying the plane's owner in 1979 with a revised manual, pursuant to Federal Aviation Administration directive, which contained pertinent warning information.

■ A court should grant a motion for judgment n.o.v., just as a motion for directed verdict, only if the nonmoving party has failed to present "substantial evidence ... of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). The court should allow all reasonable inferences to be drawn in the nonmovant's favor, but must also consider all evidence in the case, rather than just the evidence favorable to the nonmovant. *Id.* "A scintilla of evidence is insufficient to present a question for the jury." *Id.*

Product liability doctrine governing the manufacturer's duty to warn is well settled in Texas. The absence of adequate warnings or directions may render a product defective and unreasonably dangerous, even if the product has no manufacturing or design defects. However, there is no duty to warn of dangers obvious to the user of the product. Whether there is a duty to warn and the adequacy of warnings given must be evaluated in connection with the knowledge and expertise of those who may reasonably be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain. *Koonce v. Quaker Safety Products & Mfg.*, 798 F.2d 700, 716–17 (5th Cir.1986); *Middleton v. Harris Press and Shear, Inc.*, 796 F.2d 747, 751 (5th Cir.1986); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 464–65 (5th Cir.1976).

■ Plaintiffs point to the practice, taught to all pilots, of relying upon a pre-flight checklist, rather than a pilot's individual judgment, in order to ensure safe procedure: This practice recognizes that the sudden dangers accompanying flight make it desirable to adhere to a routine, rather than to make individualized judgments about safety requirements. Plaintiffs contend that the checklist practice, and the inclusion of the seat lock on some checklists, created a duty upon Beech to warn pilots that their seats should be locked before takeoff. Although we need not decide whether inclusion of a checklist item discharges the manufacturer's duty to warn, we are constrained to observe that Beech did in fact include the seat lock in the 1979 pre-flight checklist which was transmitted to owners of Beech Musketeers. It is undisputed that the revised checklist was sent to, and received by, own-

ers of the aircraft involved in Argubright's crash.

Moreover, the practice of relying upon the checklist undermines the plaintiffs' contention that some additional warning was necessary. The plaintiffs apparently assume that the pilot should have been given additional reasons to think about the dangers resulting from a loose seat. The whole point of the checklist procedure, however, is to replace individualized judgments about danger with a routine responsive to those dangers. The use of such a routine only underscores the absence of any duty upon Beech to direct pilots' attention back to open and obvious dangers.

The danger in this case results from the possibility that an unlocked pilot's seat may slip backward and deprive the pilot of control of his aircraft. As anyone who has ever driven an automobile knows, stable and secure operation of the steering wheel, pedals, and other controls requires the driver's seat to be firmly positioned. The danger that an unlocked seat could slide back, making it difficult or impossible to operate safely, or even to reach, those controls, is open and obvious to any reasonable driver.

These dangers are no less obvious to pilots, even to novice pilots acting under the direction of a flight instructor. The pilot, just as the automobile driver, would, through the exercise of common sense, innately appreciate the difficulty in reaching and stably operating the controls and foot pedals from a seat which had not been secured into position. Furthermore, any pilot would know that the altitude is regulated by sliding the control back and forth between the pilot's body and the control panel—parallel to the movement of the pilot's seat. A manufacturer should be allowed to rely on the pilot's awareness that constant positioning and smooth adjustment of the altitude control would be difficult or impossible, especially during the critical moments and high forces of the takeoff, from a seat that was able to move freely in the same direction as the control.

The parties dispute whether Argubright unlocked his seat during takeoff, something that even the plaintiffs' expert referred to as "irrational" and violative of "common sense." We need not resolve that question, for we find that the jury could not have reasonably determined that Beech should reasonably have anticipated that student pilots would position their seat but fail to lock it prior to takeoff. Accordingly, we find, as a matter of law, that Beech Aircraft owed no duty to warn Argubright or other intended Musketeer users, i.e. pilots, of the need to lock the seat prior to takeoff. The district court judge erred by allowing the jury to find to the contrary and by denying Beech Aircraft's motions for directed verdict and for judgment notwithstanding the verdict.

Our decision renders moot the cross-appeal filed by the plaintiffs in this action. The cross-appeal is therefore DISMISSED.

REVERSED and RENDERED.