**SAUDER CUSTOM FABRICATION, INC., Petitioner,**

v.

**Carl R. BOYD, et ux., Respondents.**

No. 96–1297.

Supreme Court of Texas.

Feb. 13, 1998.

Earnest W. Wotring, Houston, for Petitioner.

Cris E. Quinn, Richard J. Clarkson, James Mayer Harris, Beaumont, for Respondents.

PER CURIAM.

In *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 382 (Tex.1995), we held that "the law of products liability does not require a manufacturer or distributer to warn of obvious risks." The principal issue in this case is whether the obviousness of a risk is to be determined from the perspective of an average person or an average user of the product. The proper perspective is that of the average user. Because the risk in this case was obvious to an average user, the lower courts' judgments for the plaintiffs cannot be sustained.

Sauder Custom Fabrication, Inc. manufactured a fifty-foot-tall cylindrical pressure vessel as part of a refinery regeneration tower. The vessel was to contain two vertical, cylindrical, concentric screens installed at the site. To preserve their shape until final installation, each screen contained shipping rings—circular iron bands that fit inside a screen with tension bolts which, when tightened, expanded the rings against the inside of the screen, thus preserving its round shape. Each ring weighed about 150 pounds. After the outer screen was installed in the vessel with the rings in place, a crew of five boilermakers was assigned to descend into the vessel inside the screen and remove the rings.

There were no warnings on the rings and no instructions on how to remove them. The boilermakers planned to attach a crane to each ring in turn, loosen the bolts to relieve the pressure holding the ring against the screen, then lift the ring out. The crew placed some wooden boards across the diam-

eter of the lower ring to make a scaffold on which they could stand and work on the upper rings. Although the crane was temporarily unavailable, the crew decided to proceed without it. Carl Boyd and two others climbed into the pressure vessel and onto the makeshift scaffold. The two with Boyd secured their safety lanyards to eye hooks welded to the inside of the vessel, but Boyd had misgivings about the strength of those hooks and had his lanyard thrown over the top lip of the vessel and attached to a sturdier ring on the outside. For reasons that cannot be explained, the crew began loosening the bolts of the higher ring, even though it was apparent that if they did so, the ring would fall, there being nothing to hold it up. As soon as the first bolts were loosened, the ring did fall, knocking out the scaffold below it. The lanyards attached to the inside hooks held, but the steel lip of the vessel sheared Boyd's lanyard, and he fell approximately 30 feet to the bottom, sustaining severe injuries.

Four of the five crew members—all but Boyd—were experienced journeymen boilermakers. A journeyman boilermaker must have four years' training working in confined spaces, constructing and repairing boilers and heaters, hanging iron, placing vessels on their foundations, installing catwalks on the outside of vessels, welding, and using scaffolding, and must take a four-year correspondence course that includes a section on safe working practices. Boyd had five years' experience and had completed about 95% of the required training.

Boyd and his wife sued Sauder and others, asserting strict liability and negligent warning claims. Based on jury findings that the regeneration tower contained a marketing defect because no warnings or instructions were placed on the rings and that Sauder was negligent, the trial court rendered judgment for Boyd. On appeal, Sauder argued that it had no duty to warn of obvious dangers, that the danger of falling in this case was obvious as a matter of law, and that there was no evidence it was negligent. The court of appeals rejected these arguments, explaining that "we cannot say it is beyond dispute that the average person, looking at the shipping rings and the screen, would understand that the weight of several wooden boards and three men would cause the shipping ring to fall." 1996 WL 628599, —— S.W.2d ——, ——.

■ Assuming that the risk of falling would not be apparent to an ordinary person looking at a makeshift scaffold supported only by a removable ring pressed against the inside of a tall cylinder, Boyd was not an ordinary person. He was a boilermaker trained to work with such risks. Like the others in his crew and any ordinary boilermaker in his position, he understood that when the tension bolts were released, the shipping ring would fall and strike whatever was in its path—in this case, the scaffolding stretched across the next lower ring in the cylinder. Indeed, all three men working in the cylinder used lanyards attached to the sides of the cylinder to prevent them from falling. Boyd fell, not because he mistakenly believed the scaffold was secure, but because he took inadequate precautions against falling by placing his lanyard over the rim of the vessel so that it severed when he fell.

■ The court of appeals correctly noted that Boyd's own experience and subjective knowledge are irrelevant in determining whether Sauder had a duty to warn of the risk that a ring could fall. As we said in *Caterpillar*, "whether a recognition of risk 'is within the ordinary knowledge common to the community' is an objective standard. Likewise, we conclude that whether a product has obvious dangers requires an objective standard." 911 S.W.2d at 383 (citation omitted). However, the appeals court incorrectly reasoned that ignoring a particular user's knowledge and expertise entails ignoring an ordinary user's knowledge and experience. Such a rule would make no sense. An average person might have far greater appreciation of the danger of a child's toy, but the obviousness of the danger cannot be evaluated from an adult's perspective. An average person has far less appreciation of the dangers involved in boilermakers' work, but that fact does not make all the products a boilermaker uses unreasonably dangerous.

Although *Caterpillar* did not focus on this issue, it cannot fairly be read to support the appeals court's position. We said that "the

duty to warn is limited in scope, and applies only to hazards of which *the consumer* is unaware." *Id.* at 382 (emphasis added). The consumer's perspective is that of an ordinary user of the product, not necessarily the same as that of an ordinary person unfamiliar with the product. Many of the cases on which we relied support this principle. *E.g. Gray v. Manitowoc Co.,* 771 F.2d 866, 870–71 (5th Cir.1985) (precluding a crane operator from recovering because the existence of a blind spot was common knowledge to construction workers so no warning was required); *Posey v. Clark Equip. Co.,* 409 F.2d 560, 563 (7th Cir.), *cert. denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969) (providing that before defendant can be held liable for failure to warn, the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it"); *Winterrowd v. Travelers Indem. Co.,* 462 So.2d 639, 642 (La.1985) (stating that "[t]he duty to warn does not include dangers which are obvious to the ordinary user"); *Bavuso v. Caterpillar Indus., Inc.,* 408 Mass. 694, 563 N.E.2d 198, 201–02 (1990) (holding that a manufacturer does not have a duty to warn of danger that would have been obvious to an experienced forklift operator). Many other cases employ the same ordinary user standard. *E.g. Lopez v. Aro Corp.,* 584 S.W.2d 333, 336 (Tex. Civ.App.—San Antonio 1979, writ ref'd n.r.e.) (stating that "[t]he adequacy of a manufacturer's warning cannot be evaluated apart from the knowledge or expertise of those who could reasonably be expected to use the product"); *Scallan v. Duriron Co.,* 11 F.3d 1249, 1252 (5th Cir.1994) (holding that the danger of circulating chlorine through a pump at a chemical plant was obvious to an ordinary user ); *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1418 (5th Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994) (deciding that the danger of a rotating auger in a commercial ice storage unit was obvious to an ordinary user); *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 997 (5th Cir.1989) (determining that the danger of a nip point and revolving cylinders in a paper rewinder was obvious to an ordinary user); *Argubright v. Beech Aircraft Corp.,* 868 F.2d 764, 767 (5th Cir.), *cert.*

*denied,* 493 U.S. 934, 110 S.Ct. 325, 107 L.Ed.2d 315 (1989) (holding that an aircraft manufacturer had no duty to warn a pilot about the danger of taking off with an unlocked pilot seat because such a duty must be evaluated in connection with the knowledge and expertise of those who may reasonably be expected to use the product); *Garnes v. Gulf & Western Mfg. Co.,* 789 F.2d 637, 640 (8th Cir.1986) (determining that the danger of falling ten feet off a forging press was obvious to an ordinary user); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 465–66 (5th Cir.1976) (stating that the adequacy of warnings "cannot be evaluated apart from the knowledge and expertise of those who may reasonably be expected to use" the product). This is also the view adopted by the *Restatement (Third) of Torts: Products Liability,* which states: "In general, a product seller is not subject to liability for failing to warn or instruct regarding risks and risk avoidance measures that should be obvious to, or generally known by, foreseeable product users." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 2, cmt. j (1997).

No ordinary person trained to do the work Boyd and his crew were doing could have failed to appreciate the obvious risk of falling. Thus, as a matter of law, Sauder had no duty to warn of the risk. For this reason Boyd cannot recover on either his products liability or his negligence claim. *See Joseph E. Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387–88 (Tex.1991) (holding that no duty to warn of open and obvious danger of alcoholism from prolonged and continuous consumption of alcoholic beverages barred all claims, including products liability and negligence). Accordingly, without hearing oral argument, the Court grants Sauder's application for writ of error, reverses the judgment of the court of appeals, and renders judgment for Sauder. TEX.R.APP. P. 59.1.