Affirmed and Opinion filed September 9, 2003















Affirmed and
Opinion filed September 9, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-01-01062-CV

_______________

 

SUSAN WOOD,
INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATES OF J. D. McCULLOUGH
AND FERN McCULLOUGH AND THE ESTATE OF J. D. McCULLOUGH, Appellants

 

V.

 

PHILLIPS PETROLEUM COMPANY, BETHLEHEM STEEL CORPORATION, EXXONMOBIL
CORPORATION, CHEVRON U.S.A., INC., SUCCESSOR TO GULF OIL CORPORATION, SUNTIDE,
INC., TEXACO, INC., AMOCO CHEMICAL COMPANY, AMOCO CORPORATION, and AMOCO OIL
COMPANY, Appellees

_______________________________________________________________________

 

On Appeal from
the 56th District Court

Galveston County, Texas

Trial Court
Cause No. 97CV1003

_______________________________________________________________________

 

O P I N I O N

 

            In this wrongful death action, Susan
Wood, individually and as representative of the estates of J. D. McCullough and
Fern McCullough, and the estate of J. D. McCullough[1] appeal a
summary judgment in favor of Phillips Petroleum Company, Bethlehem Steel
Corporation, ExxonMobil Corporation, Chevron U.S.A.,
Inc., Successor to Gulf Oil Corporation, Suntide,
Inc., Texaco, Inc., Amoco Chemical Company, Amoco Corporation, and Amoco Oil
Company, on various grounds.  We affirm.

                                                                   Background

            J. D. McCullough was allegedly
exposed to benzene while working for Monsanto Company (“Monsanto”) from 1951 to
1964 and contracted acute myelogenous leukemia
(“AML”) which caused his death.  A
lawsuit was filed on behalf of his and his wife’s estates against Monsanto and appellees asserting claims for strict liability,
negligence, gross negligence, misrepresentation, fraud, breach of warranty, and
conspiracy.  Monsanto was dismissed from
the case after it reached a settlement with appellants, and appellees
filed a motion for summary judgment based on: (1) a “bulk supplier” defense;
(2) no evidence of cause-in-fact; and (3) no evidence of product
identification.[2]  The trial court granted appellees
a take-nothing summary judgment on all of appellants’ claims without specifying
the ground(s) it relied upon.

                                                            Standard of Review

            A traditional summary judgment may
be granted if the motion and summary judgment evidence show that there is no
genuine issue of material fact and the moving party is entitled to judgment as
a matter of law on the issues expressly set out in the motion or response.  Tex. R.
Civ. P. 166a(c).  A movant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim. 
Southwestern Elec. Power Co. v.
Grant, 73 S.W.3d 211, 215 (Tex. 2002).

            A no-evidence summary judgment must
be granted if a motion for summary judgment asserts that there is no evidence
of an essential element of an adverse party's claim and the nonmovant
fails to produce summary judgment evidence raising a genuine issue of material
fact on that element.  See Tex.
R. Civ. P. 166a(I).  In reviewing a no-evidence summary judgment,
we examine the record in the light most favorable to the nonmovant,
looking to see if more than a scintilla of evidence raised a genuine issue of
material fact on the challenged element. 
See Wal-Mart Stores, Inc. v.
Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).

            In reviewing a summary judgment, we
also take as true all evidence favorable to the nonmovant,
and indulge every reasonable inference, and resolve any doubts, in the nonmovants’ favor.  Grant, 73 S.W.3d at 215.  Where a summary judgment does not specify the
grounds relied upon for its ruling, it will be affirmed if any of the theories
advanced are meritorious.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001).

                                                             Evidentiary Issues

            Appellants’ first issue argues that appellees’ summary judgment evidence could not properly be
considered because it was irrelevant, hearsay, hearsay within hearsay, and not
produced in response to discovery.  The
items of evidence to which appellants’ brief assigns  error in this regard are the Poston deposition, and defendants’
exhibits E, F, I, J, K, L, M, and N.  To
the extent it is necessary to rely on any of these materials to affirm the
trial court’s judgment, we will address their admissibility as they are
otherwise referred to.

                                                Bulk Supplier and Cause-in-Fact

            Appellants’ third issue[3]
contends that appellees failed to prove that they
discovered or warned Monsanto, or that Monsanto otherwise knew, how to use
benzene safely.  In this regard,
appellants’ petition alleged, among other things, that appellees,
as manufacturers of benzene, breached their duties to: (1) perform testing
necessary to determine the levels of occupational exposure to benzene at which
it had toxic effects to workers; (2) warn that they had failed to do so and
that the threshold limit values recommended by the American Conference of
Governmental Industrial Hygienists were unproven and unsafe; and (3) instruct
McCullough or Monsanto on the safe use and handling of benzene.

 

            One ground of appellees’
motion for summary judgment was the “bulk supplier” defense, i.e., that appellees
had no such duty to warn McCullough or Monsanto because they supplied the
benzene to Monsanto in bulk and Monsanto was familiar with the properties,
hazards, and safe use of benzene and was thereby capable of warning its
employees adequately.  Appellees’ motion similarly sought to negate the
cause-in-fact element of appellants’ claims by contending that, because
Monsanto was capable of providing such warnings, appellees’
alleged failure to provide them could not have been a cause-in-fact of
McCullough’s injury.

            The existence of a duty to warn of
dangers or instruct on the safe use of a product is a question of law.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 426 (Tex.
1997).  A manufacturer has a duty to warn
if it knows or should know of
potential harm to a user[4]
because of the nature of its product.  Id.;  Bristol-Meyers
Co. v. Gonzales, 561 S.W.2d 801, 804 (Tex. 1978).[5]  Dangers that a seller “should know” include
those that are reasonably forseeable or
scientifically discoverable at the time the product is sold.[6]  See Borel v. Fibreboard Paper Prods.
Corp., 493 F.2d 1076, 1088 (5th Cir. 1973). 
A manufacturer also has a duty to instruct users on the safe use of its
product.  Pavlides v. Galveston Yacht Basin, Inc., 727 F.2d 330, 338 (5th Cir.
1984).  In this regard, a manufacturer is
held to the knowledge and skill of an expert. 
Borel,
493 F.2d. at 1089.  This means that it
must not only 

 class=Section2>

keep
abreast of scientific knowledge, discoveries, and advances, but, more
importantly, test and inspect its product. 
Id. at
1089-90.  This duty to research and
experiment is commensurate with the dangers involved.  Id. at
1090.  A manufacturer may not rely unquestioningly
on others to raise concerns about its product, but must instead show that its
own conduct was proportionate to the scope of its duty.  Id.

            In some instances, a bulk supplier,
who has no package of its own on which to place a label, may satisfy its duty
to warn ultimate users of its product by proving that the intermediary to whom
it sells the product is adequately trained and warned, familiar with the
propensities of the product and its safe use, and capable of passing its
knowledge on to users in a warning.  Alm v. Aluminum Co. of Am., 717 S.W.2d 588,
591-92 (Tex. 1986).[7]  The question in any case is whether a bulk
supplier has a reasonable assurance that its warning will reach those
endangered by the use of its product.  See id. at 591.

            As has been recognized in other
cases[8] and
reiterated by the evidence in this case, the highly toxic character of benzene
has been commonly known in the petrochemical industry, including Monsanto, for
many years.  For example, as appellants’
brief acknowledges, the American Petroleum Institute reported in 1948 that
benzene could cause leukemia, the only absolutely safe concentration for
benzene was zero, and all human contact with benzene should be avoided.[9]  Moreover, as appellants’ brief further points
out, although diminishing levels of exposure to benzene have been recommended
over the years by various groups, no study has ever demonstrated a level of
exposure above zero that is “safe” from potentially harmful effects.[10]

            Under these circumstances, appellees cannot properly be subjected to a duty to have
determined a “safe” level of exposure to benzene when McCullough worked for
Monsanto, as appellants contend, because such a determination was not
scientifically discoverable at that time. 
Rather, as the evidence in this case reflects, protecting workers from
the ill effects of benzene exposure could be accomplished, if at all, only by
minimizing such exposure with engineering controls (such as devices to keep
benzene contained and work areas well ventilated), personal protective and
respiratory equipment, and environmental and medical monitoring.[11]  In that the evidence in this case reflects
that the need for such precautions was well understood by Monsanto during the
years McCullough worked there, appellees had no duty
to instruct Monsanto on these matters, and, correspondingly, any failure by
Monsanto to protect McCullough from exposure to benzene was not caused by appellees. 
Accordingly, appellants’ challenge to this ground for summary judgment
is overruled, appellants’ challenges to the other grounds for summary judgment
need not be addressed, and the judgment of the trial court is affirmed.

 

                                                                        /s/        Richard H. Edelman

                                                                                    Justice

 

Judgment rendered and Opinion filed
September 9, 2003.

Panel consists of Justices Yates,
Edelman, and Draughn.[12]

 

 











[1]           It is not apparent from our record
why the Estate and its representative are both listed as parties.





[2]           Each of appellees’
grounds for summary judgment was asserted as against all of appellants’ claims,
and appellants’ brief does not contend that any of those grounds apply
differently as among their claims. 
Therefore, we do not distinguish among appellants’ claims in addressing
the merits of the summary judgment grounds.





[3]           We proceed to appellants’ third issue
because it is dispositive of the appeal.





[4]           The duty exists only as to hazards
of which an ordinary user of the product is unaware; therefore, a particular
user’s subjective experience and knowledge are not relevant in determining the
existence of the duty to warn.  Sauder Custom Fabrication, Inc. v. Boyd, 967
S.W.2d 349, 350-51 (Tex. 1998). 





[5]           See Restatement (Second) of Torts § 402A cmt. j (requiring seller to give warning if he has
knowledge, or by the application of reasonable, developed human skill and
foresight should have knowledge).  A
worker, like any other user, has a right to decide whether to expose himself to
the risk associated with the use of a product. 
Borel v. Fibreboard
Paper Prods. Corp., 493 F.2d 1076, 1106 (5th Cir. 1973).





[6]           Thus, as contrasted from other
grounds for strict liability, which subject a seller to liability for product
defects even where he has exercised all possible care, liability for failure to
warn is imposed (like negligence liability) only for a failure to exercise
reasonable care in discovering, and warning of, a danger.  Borel, 493 F.2d at 1088. 
Thus, too, the determination whether a duty to warn exists  is made as of the time the product leaves the
manufacturer.  Gen. Motors Corp. v. Saenz, 873 S.W.2d 353, 356 (Tex. 1993).





[7]           See Humble Sand & Gravel, Inc. v. Gomez,
48 S.W.3d  487, 494 (Tex. App.—Texarkana
2001, pet. granted) ; Munoz v. Gulf Oil
Co., 732 S.W.2d 62, 66 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.); Kahn v. Velsicol
Chem. Corp., 711 S.W.2d 310, 313-14 (Tex. App.—Dallas 1986, writ ref’d n.r.e.).





[8]           See, e.g.,
Mobil Oil Corp. v. Ellender, 968
S.W.2d 917, 922 (Tex. 1998).





[9]           See id.  Monsanto’s knowledge in this regard is
reflected by, among other things, a 1950 article published by its medical
director, Lamson Blaney,
M.D. (the “Blaney article”), recognizing that a zero
exposure level had been advocated by that time. 






[10]          Thus, for example, despite adopting
a 10 parts per million (“ppm”) standard in 1971, the
Occupational Safety and Health Administration (“OSHA”) continued to recognize
that an absolutely safe level of exposure could not be demonstrated, and
attempted unsuccessfully in 1978 to further lower the standard to 1 ppm.  See Indus. Union Dep’t , AFL-CIO v. Am.
Petroleum Inst., 448 U.S. 607, 617,
625, 627, 662 (1980).





[11]          Monsanto’s knowledge of the
existence and necessity of such precautions during the relevant period is
reflected, among other places, in the Blaney article
and a 1986 summary judgment affidavit of Emmet Kelly,
M.D., the Medical Director for Monsanto from 1939-42 and 1946-74.  Although appellants’ brief asserts generally
that this affidavit is hearsay, it does not explain why it is of any different
hearsay character than summary judgment affidavits generally or why it would be
any less admissible for summary judgment purposes in this case than in the case
for which it was originally submitted.





[12]          Senior Justice Joe L. Draughn sitting by assignment.