**AFFIRM; and Opinion Filed August 16, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00531-CV

### JUAN CARLOS FLORES, Appellant
### V.
### CHASCO, INC. A/K/A CHASCO INTERIORS, INC., ET AL., Appellees

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-09-14912-H**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

After he was injured while working at a construction site, appellant Juan Carlos Flores sued appellees Chasco Inc. a/k/a Chasco Interiors, Inc., 24 Hour Ltd., and ICI Construction, Inc. Appellees each moved separately for summary judgment, and the trial court granted the motions. In this appeal, Flores contends the trial court abused its discretion in failing to sustain his objections and special exceptions to ICI's and 24 Hour's summary judgment motions and evidence and erred in granting all appellees' motions for summary judgment. We affirm the trial court's judgment.

## Background

In July 2008, Flores was installing an HVAC system in a warehouse. He and a co-worker were working together to install duct work inside the building. Flores was seriously injured

when a scissor lift he was using fell over while extended. Flores sued appellees and others involved in the construction project.

Alcatel USA Sourcing, Inc. had hired appellee ICI as the general contractor to finish out the warehouse for use as Alcatel's distribution center. In his pleadings, Flores alleged that he was hired by Nationwide HVAC Services, Inc. to work on the warehouse HVAC system and that appellee 24 Hour, a subcontractor on the project, hired Nationwide as an independent contractor. Appellee Chasco, who was also working in the warehouse installing sheetrock, had leased the scissor lift to use there. Flores asserted causes of action against ICI, 24 Hour, and Chasco for negligence, negligence per se, and gross negligence and alleged they acted with malice toward him. He also asserted a cause of action based on section 388 of the Restatement (Second) of Torts. Flores further alleged OSHA violations, but to the extent he considered their alleged violation an independent cause of action, he has not complained on appeal about the summary judgment against him on that claim. Additionally, Flores asserted claims against 24 Hour and ICI for premises liability. Flores also sued Alcatel, Nationwide, H&E Equipment Services, Inc., which is the company that leased the scissor lift to Chasco, and the company that leased the building to Alcatel. These defendants are not parties to this appeal.

24 Hour, ICI, and Chasco each moved separately for summary judgment. 24 Hour moved for traditional summary judgment on grounds that Flores's exclusive remedy was through the workers' compensation act. ICI and Chasco filed traditional and no-evidence summary judgment motions. Flores filed objections and special exceptions to all three appellees' summary judgment motions. The trial court did not expressly rule on Flores's objections and special exceptions. The court granted appellees' summary judgment motions. This appeal followed.

**Summary Judgment for 24 Hour**

In part of his second issue, Flores contends the trial court erred when it granted 24 Hour's motion for summary judgment. 24 Hour filed a traditional motion for summary judgment asserting it was entitled to judgment as a matter of law. 24 Hour alleged that at the time of his injuries, Flores was 24 Hour's borrowed servant. 24 Hour is a workers' compensation subscriber. It thus maintained that Flores's exclusive remedy was under the provisions of the workers' compensation act. Flores maintains fact issues exist regarding whether he was a borrowed servant.

The standard of review in traditional summary judgment cases is well established. *Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 616 (Tex. App.—Dallas 2006, no pet.) (citing *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003)). The issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Wesby*, 199 S.W.3d at 616. The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Wesby*, 199 S.W.3d at 616 (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985)). All evidence and any reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* Evidence favoring the movant's position will not be considered unless it is not controverted. *Id.*

A defendant is entitled to summary judgment if it conclusively negates an essential element of the plaintiff's case or conclusively establishes all necessary elements of an affirmative defense. *Id.* (citing *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995)). A properly pleaded affirmative defense, supported by uncontroverted summary judgment evidence, may serve as the

basis for a summary judgment. *Id.*; *see* TEX. R. CIV. P. 94. The exclusive remedy provision of the Texas Workers' Compensation Act is an affirmative defense. *Wesby*, 199 S.W.3d at 617.

After the movant produces evidence entitling it to summary judgment, the burden then shifts to the nonmovant to present evidence of any issues that would preclude summary judgment or create a fact issue. *Id.* Summary judgment will be affirmed only if the record established that the movant conclusively proved all elements of its affirmative defense as a matter of law. *Id.* (citing *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979)).

Texas has long recognized that a general employee of one employer may become the borrowed servant of another. *Id.* A borrowed servant is properly covered by the borrowing employer's workers' compensation insurance. *Id.* Thus, to prevail on the borrowed servant affirmative defense, the employer must plead and prove that (1) the employee was a borrowed servant; (2) the employee was entitled to workers' compensation benefits; and (3) the employer had workers' compensation insurance that covered the claims asserted by the borrowed servant. *Id.* at 617–18. Of these elements, Flores challenges only whether 24 Hour established that he was its borrowed servant.

As summary judgment evidence, 24 Hour presented portions of Flores's deposition. In it, Flores testified that he began working for Nationwide in March 2008. (Flores referred to Nationwide as "AC" in his deposition.) Nationwide would send him out to a location to work for 24 Hour. 24 Hour would direct his work, tell him what needed to be done, and what work to do. 24 Hour would tell him when to start and stop, as well as supervise him throughout the day. When he was working at the warehouse in question, someone with 24 Hour told him what to do and when to start and stop. He worked from 7a.m. to 4p.m. at the warehouse. At the warehouse, he remembered being supervised by Toby Walters, who was employed by 24 Hour. Walters told Flores what to do and Flores considered him to be his boss. Flores was part of team that installed

air conditioning units on the roof of the warehouse. When that job was finished, Walters instructed Flores to work on the ductwork. He gave Flores orders regarding the work and would tell him and others what time to break for lunch. Walters provided the materials Flores required to do the job.

When Flores arrived at work on the day of the accident, Walters told him to keep hanging ductwork. Different trades were working in different areas of the building. There were also electricians, plumbers, and people doing sheetrock. Flores spent two hours assembling ductwork. Then Walters wanted him to help another worker, Federico, install the ductwork "straight down from the roof." Flores and Federico did that from 9 until 12. Flores picked up the ducts and held them while Federico screwed them in. They used one scissor lift at that time. They would use the scissor lift to install a piece, and then lower the lift to get another piece. Federico operated the lift's controls. After a break for lunch, Walters instructed Flores to continue working with Federico. They needed to hang a different piece of duct, a "90 degree angle." Walters noticed that the weight of both men and "the 90" was too much for one scissor lift. Walters instructed Flores to get a second scissor lift. Walters directed Flores to use a particular lift. Flores testified that Federico had the 90 degree duct with him in the first lift. Flores and Federico raised the lifts up, "[Federico] with the duct and [Flores] by himself." Flores testified that he believed that the scissor lift hit the ductwork that was already hanging from the roof and slipped. Walters was present at the time of the accident.

24 Hour also attached portions of the deposition of Thomas Littrell, Flores's expert, to its motion for summary judgment. Littrell testified that Nationwide provided its employees to 24 Hour for them to use to install the HVAC in the warehouse. According to Littrell, Walters had testified that he was directing Flores's work on the day of the accident. Walters provided the

materials Flores was using. Littrell understood that Flores was a borrowed employee under the direction of 24 Hour.

In response, Flores asserted that his summary judgment evidence established that he was not 24 Hour's borrowed servant. The excerpts of Flores's deposition attached to his response provided more details about the accident. For example, Flores stated that after his scissor lift reached the necessary height, he turned it off by touching a button. He estimated he was 15 to 16 feet off the ground. Federico handed Flores the 90 and as he pulled it toward him, he felt his lift starting to go up. Flores was not sure what caused his lift to continue going up. He could not see whether the ductwork had come in contact with the controls. When Flores realized the lift was falling, he grabbed onto the railing. Flores was hospitalized for a month and a half and had not worked since the accident. Flores testified that Walters did not tell him where to position his scissor lift. Flores decided where to position the lift.

In his deposition, Walters testified that he was working as a lead man or supervisor for 24 Hour at the time of this incident. His responsibilities included supervising the work that goes on the air conditioning end of the job site. At the time of the accident, Walters was assembling ducts near the lifts the men were using. He heard a crunching sound, so he looked up. He saw the railing of Flores's lift hitting the duct work suspended from the ceiling. The duct then swung out from the pressure and hit the side of Flores's lift and tipped it over. Walters stated that he told Flores to hang the duct work and told him to use the scissor lift to do so. Walters testified that Flores and his co-worker positioned the 90 on the rails of both scissor lifts before raising the platforms.

Flores also presented other summary judgment evidence, including deposition testimony from Joe Holden, 24 Hour's safety director. Holden testified that 24 Hour directed the

temporary workers from Nationwide on the job site. The supervisor would tell them when and where to arrive and each task that they were supposed to do.

24 Hour's summary judgment evidence established that it controlled the details of Flores's work. *See Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 477 (Tex. 2005) (worker hired by temp agency and injured while working for agency's client was employee of client where client controlled details of his work). Flores disputes that the details of the work that caused the injury were not specifically directed by Walters. He asserts that the fact that Walters instructed Flores to use Chasco's scissor lift, in tandem with Federico in 24 Hour's scissor lift, to lift the 90 so it could be connected to the duct work was insufficient control over the details. He relies on the fact that Walters did not control the details by which Flores and Federico raised the lifts and the 90. Flores also cites Walters's testimony that Walters was not looking up at him and Federico as they used the two lifts together as evidence he was not controlling the details of the work. Although Flores asserts he was expected only to give the results called for by 24 Hour and thus could not be a borrowed servant, the evidence shows 24 Hour controlled the details of the work he was doing, such as when and how to install the duct work, rather than just leaving it to Flores to achieve the result. Flores seems to argue that 24 Hour needed to direct every small aspect of his work. This is not the law. And Littrell, Flores's own expert, testified Flores was 24 Hour's borrowed servant.

Flores asserts that because he did not speak much English, and Walters spoke only a little bit of Spanish, a fact issue exists regarding whether Walters could have controlled the details of his work. Flores stated that Walters spoke a little bit of Spanish. Walters spoke to Federico and Federico would explain what he said to Flores. Also, both Flores and Walters indicated they communicated through gestures. Walters pointed to the scissor lift and indicated he wanted Flores to use it to help connect the 90. Walters testified that Flores and his co-worker could

understand him a little bit and he could understand them a little bit. This evidence does not raise a fact issue about whether Walters controlled the details of the work.

In addition, Flores contends the trial court should have denied 24 Hour's motion for summary judgment due to the terms of the written Subcontract Agreement between Nationwide and 24 Hour. Flores attached a copy of the agreement to his summary judgment response. He cites language in the agreement that states, "Subcontractor [Nationwide] agrees to provide such Work under the general direction of Contractor [24 Hour]." Flores also relies on language stating that neither Nationwide nor its representatives shall hold themselves out as, or claim to be acting in the capacity of, an employee of 24 Hour. Finally, Flores refers to language in the agreement stating that the agreement shall not be construed to create a contractual relationship of any kind between anyone other than 24 Hour and Nationwide. This language is not inconsistent with the evidence that 24 Hour controlled the details of Flores's work, and we conclude it does not raise a fact issue.

Flores also contends that his deposition testimony contains improper legal conclusions due to the fact that he had only an eighth grade education, which he received in Mexico. Flores relies on *Dodd v. Twin City Fire Ins. Co.*, 545 S.W.2d 766 (Tex. 1977). At issue in that case was whether the plaintiff was an employee of Lone Star or a borrowed servant of Texas Farm. Lone Star and Texas Farm were owned by the same six people. They were "companion businesses," located on adjacent lots with a shared business office. A jury found that the plaintiff was an employee of Lone Star. *Id.* at 768. The court of civil appeals reversed, concluding that, as a matter of law, the plaintiff was a borrowed servant of Texas Farm. The supreme court reversed the court of appeals, holding there was evidence to support the jury's finding. The court of appeals had relied heavily on the plaintiff's testimony that "they borrowed me up there" as concession that he was Texas Farm's borrowed servant. The supreme court noted the plaintiff's

tenth grade education. Flores relies on the following language in the opinion, "On redirect examination he made it clear that he did not mean that he was a borrowed servant in the legal sense, if indeed he was capable of forming that correct conclusion." *Id.* at 769. Here, Flores did not testify that he was a borrowed servant. He instead testified about the manner in which Walters with 24 Hour directed his work. *Dodd* does not stand for the proposition that he was not qualified to do so due to his limited education. In his brief, Flores quotes various yes or no answers he gave in his deposition and argues the testimony amounts to legal conclusions because he did not give any underlying facts. We have reviewed Flores's deposition and it contains underlying facts about Flores's work at the warehouse. The trial court did not err in granting summary judgment for 24 Hour. We overrule that portion of Flores's second issue that relates to 24 Hour's motion for summary judgment.

Included with his response to 24 Hour's motion for summary judgment were objections and special exceptions to 24 Hour's motion for summary judgment. In his first issue, Flores contends in part that the trial court abused its discretion when it failed to sustain his objections and special exceptions to 24 Hour's motion. Although Flores's issue mentions special exceptions, the argument in his brief under this issue contains only argument about 24 Hour's summary judgment evidence. He does not complain that its motion needed clarification. Flores objected to the affidavit of Olga Varela and now contends the court should have stricken it for various reasons. We have resolved the issue of whether summary judgment for 24 Hour was proper without considering Varela's affidavit. Because 24 Hour's summary judgment evidence was sufficient without Varela's affidavit, we need not consider this portion of Flores's first issue. *See Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (court does not review all objections to summary judgment evidence, only those with bearing on outcome).

## Summary Judgment for Chasco

We turn now to the propriety of summary judgment in favor of Chasco, the company that rented the scissor lift Flores was using when he was injured. Chasco filed a traditional and no-evidence motion for summary judgment. As traditional grounds for summary judgment, Chasco asserted that it owed Flores no duty because he was not its employee or independent contractor. Chasco also asserted Flores had no evidence of any of the elements of his causes of actions. In a portion of his second issue, Flores contends he produced more than a scintilla of evidence regarding the elements of his negligence claims.

In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment cannot properly be granted. *Id.*

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015). We begin by examining whether Flores produced more than a scintilla of evidence regarding the duty element. Before there can be a cause of action for negligence, the defendant must have recognized legal duty or obligation to the plaintiff. *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 880 (Tex. App.—Fort Worth 2002, no pet.). Flores acknowledges that he was not an employee or independent contractor of Chasco and that it did not supervise his work. Flores first seems to argue that Chasco owed him a duty based on the rental agreement between Chasco and H&E. He cites language in the agreement requiring Chasco to be "responsible for equipment until picked up by or delivered to H&E, regardless of rental call off time/date." This language is in a paragraph obligating H&E to make every effort

–10–

to pick up rental equipment at a time when a customer representative will be available. As a matter of law, this language does not create any duty on the part of Chasco to Flores.

Flores also contends Chasco had a duty to provide suitable warnings regarding the scissor lift because Chasco created a dangerous condition on the premises. Flores cites section 388 of the restatement of torts. Under section 388, a supplier of a chattel is liable for "physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied," if the supplier:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RESTATEMENT (SECOND) OF TORTS § 388 (1965). Under section 388, the question of whether a duty to warn exists must be evaluated in light of the knowledge of ordinary consumers. *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 585 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.). There is no duty to warn of obvious dangers. *Id.*

Flores does not specify what the dangerous condition of the scissor lift was. Dangers that are common knowledge to the ordinary consumer require no warning. *Id.*; *see Sauder Custom Fabrication v. Boyd*, 967 S.W.2d 349, 350 (Tex. 1998) (manufacturer of cylindrical pressure vessel at refinery had no duty to warn experienced journeyman of risk of falling from makeshift scaffold created inside vessel). Here, Flores has not pointed to any dangers in the use of the scissor lift that an ordinary user of the lift would not be aware of. Flores cites many cases in his brief, all of which are distinguishable. *See, e.g.*, *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 186 (Tex. 2004) (if section 388 applied, supplier of flint used for abrasive blasting had no duty to warn plaintiff's employer that inhalation of silica dust can be fatal because

–11–

supplier had reason to believe employer knew of dangers); *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963) (supplier of compressor involved in explosion sent its employees to job site to operate compressor); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (when child choked on balloon, negligence claim under section 388 failed because balloon was used for something other than its intended use, which is to fill with air or water). We conclude Flores has not produced more than a scintilla of evidence that Chasco owed him a duty and therefore the trial court did not err in granting summary judgment for Chasco. We overrule that portion of Flores's second issue that relates to his claims against Chasco.

### Summary Judgment for ICI

Finally, we turn to the summary judgment in favor of ICI. ICI initially filed a combined traditional and no-evidence motion for summary judgment. As traditional grounds for summary judgment, ICI asserted that it owed no duty of care to Flores because it did not retain any control over the manner in which Flores performed his work. In the no-evidence portion of its motion, ICI asserted that Flores had no evidence of the elements of his negligence claims. The trial court granted summary judgment for ICI on Flores's negligence claims. Flores's premises liability claim remained. ICI then moved for a no-evidence summary judgment on the elements of Flores's premises liability claim. The trial court granted the motion.

In his appellate brief, Flores refers to ICI as the general contractor for the finish out of the distribution center. He refers to 24 Hour as the HVAC subcontractor on the job. Ordinarily a general contractor does not owe a duty to insure that an independent contractor performs its work in a safe manner. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). A duty does arise if the general contractor retains some control over the manner in which the

–12–

independent contractor performs its work. *Id.* A general contractor retains the right to control an independent contractor's work either by contract or by actual exercise of control. *Id.*

To show evidence of ICI's duty to him, Flores relies on the Construction Services Agreement between Alcatel and ICI. He cites portions of the agreement requiring ICI to provide all of the resources necessary for the work. He maintains that the agreement imposed a duty on ICI because ICI retained control over the work Flores performed on the jobsite. But there is no evidence that ICI was hired to install the HVAC system. Nor is there any evidence in the record of any contractual agreement between ICI or one of its subcontractors and 24 Hour or Nationwide for HVAC services. In fact, in his reply to 24 Hour's motion for summary judgment, Flores himself produced a copy of a separate Construction Services Agreement between Alcatel and 24 Hour. Flores has not presented any evidence that he was working for a subcontractor of ICI. As such, the contract between ICI and Alcatel does not create a duty to Flores.

Flores also failed to present evidence that ICI exercised actual control over him at the warehouse. He attached the affidavit of Joe Holden, 24 Hour's safety director, to his response to ICI's motion for summary judgment. Holden testified that ICI did not direct any of the work being done by 24 Hour. Walters was the one who gave the instructions about installing the ducts and had control over the work being done by Flores. We conclude the trial court correctly granted summary judgment for ICI on Flores's negligence-based claims because Flores did not produce more than a scintilla of evidence ICI owed him a duty.

Turning to Flores's premises liability claim, ICI filed a no-evidence motion for summary judgment asserting Flores had no evidence of the elements of such a claim. Specifically, ICI argued Flores had no evidence: ICI was a possessor of the premises, had actual or constructive knowledge of some dangerous condition on the premises, any alleged condition posed an

–13–

unreasonable risk of harm to Flores, ICI breached a duty of ordinary care to Flores by failing to adequately warn of the condition and failing to make the condition reasonably safe, and any breach proximately caused Flores's injuries. *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 935 (Tex. 1998).

Flores relies on affidavit testimony from David Graves, ICI's vice president, that ICI had a superintendent on the job site supervising ICI's subcontractors. But it is unclear what Flores alleges the dangerous condition of the premises to be. In his brief, Flores refers to ICI's failure to inspect the lift while he was in it or to warn him of the hidden dangers of using the lift without proper training. These are allegations of a negligent activity, not a premises defect. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527–30 (Tex. 1997) (premises defect and negligent activity are independent theories of liability; injury allegedly caused by equipment left on ground was premises defect). He cites no authority for the proposition that the presence or condition of the scissor lift alone was an unreasonably dangerous condition. We conclude Flores produced no evidence that ICI had actual or constructive knowledge of a dangerous condition on the premises. We overrule that portion of Flores's second issue that relates to the summary judgment for ICI.

In a portion of his first issue, Flores contends the trial court erred in overruling his objections to some of ICI's summary judgment evidence, specifically the affidavits of David Graves and Joe Holden. We have upheld the summary judgment for ICI on no-evidence grounds and thus have not considered ICI's summary judgment evidence. Flores's complaint is moot. We overrule his first issue.

Finally, we note that after Flores's claims against appellees were disposed of by summary judgment, he still had claims pending against Alcatel. In their appellate brief, appellees assert that Flores waived his right to complain of the summary judgments because Flores's counsel and

counsel for Alcatel subsequently approved an agreed order of dismissal that dismissed the action with prejudice. At oral argument, Flores maintained the agreed order merely disposed of his remaining claims against Alcatel. We note that after the trial court signed the agreed order, it heard and denied Flores's motion for reconsideration of ICI's motion for summary judgment. Because we have determined that the trial court properly granted summary judgment in favor of all three appellees, we need not consider appellees' alternative argument for affirming the judgment.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

140531F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUAN CARLOS FLORES, Appellant

No. 05-14-00531-CV        V.

CHASCO, INC. A/K/A CHASCO
INTERIORS, INC., ET AL., Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-09-14912-H.
Opinion delivered by Justice Brown, Justices
Lang-Miers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees CHASCO, INC. A/K/A CHASCO INTERIORS, INC., ET AL. recover their costs of this appeal from appellant JUAN CARLOS FLORES.

Judgment entered this 16th day of August, 2016.